Argued and submitted June 22, reversed and remanded for further proceedings November 23, reconsideration denied December 17, 1981, petition for review denied January 12, 1982 (292 Or 356)

# STATE OF OREGON,
*Appellant,*

*v.*

# RICHARD JAMES FULLER,
*Respondent.*

## (No. C 80-09-33251, CA A20218)

636 P2d 447

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Ernest E. Estes, Deputy Public Defender, Salem, argued the cause for respondent. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

The state appeals a pretrial order suppressing statements defendant made following his arrest.

Defendant moved to suppress any statements made to law enforcement officers on the grounds that the statements were taken

"* * * in violation of defendant's rights and the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, and, in any event, were the fruits of an illegal arrest and an illegal detention, rendering them inadmissible. Additionally, said statements were taken in violation of defendant's right to counsel, which had been asserted and not waived."

The state called two witnesses during the hearing on the motion. A city police detective testified that, following defendant's arrest for burglary, he was brought to the police station. He was advised of his constitutional rights and signed a "rights card" indicating he understood the rights. He then stated he did not wish to talk to the detective and requested an attorney. He used the telephone in an apparent attempt to call an attorney. After defendant's request for counsel, the detective had no further conversation with him, except casual conversation unrelated to his arrest or the charges he was facing. Ten to fifteen minutes after defendant requested an attorney, he asked the detective if he could speak to a Drug Enforcement Administration (DEA) agent, stating that he might have some information of value to that agency. The detective called DEA Agent Horn and relayed the message.

Horn testified that he arrived at the police station a short time later. He was informed that defendant was under arrest for burglary and a sex crime involving a twelve-year old boy. He was not told that defendant had been advised of his constitutional rights or that he had requested an attorney. Horn was introduced to defendant, who requested that he and Horn be allowed to speak in private. They were left alone in the squad room. Horn did not advise defendant of any constitutional rights and did not ask defendant any questions. Defendant began a free-flowing narrative of his life, during which he made incriminating statements regarding the charges for which he

had been arrested. He also talked to Horn about illegal drug activity.

After the state presented the two witnesses and rested, the following colloquy occurred:

"THE COURT: Are there any further motions?
"* * * * *

"[DEFENSE COUNSEL]: You know, aren't we going to get a chance to participate in this?
"* * * * *

"[DEFENSE COUNSEL]: I've got the impression you've already decided this.

"THE COURT: Of course.

"[DEFENSE COUNSEL]: Well, you haven't heard all the evidence yet and I object.

"THE COURT: You object?

"[DEFENSE COUNSEL]: Yes. I think you've decided without allowing us to call any witnesses.

"THE COURT: I have, Mr. Olstad, and it's in your favor, Mr. Olstad. Just sit down.
"* * * * *

"THE COURT: I think the — I don't think the burden of proof has been sustained here. The fellow requested a lawyer. He didn't stop talking and someone else comes in, doesn't give him the Miranda warning. Even though this man — the totality of the circumstances, the fellow's in custody and he — the burden of proof has not been sustained. Motion sustained."

The court made no oral findings of fact and the written order simply granted defendant's motion to suppress. It is difficult to determine the factual bases upon which the court based its conclusion that the statements were inadmissible. If the court found the facts to be as the state's witnesses testified, we conclude the court erred in suppressing defendant's statement.

We must first identify the relevant inquiry. In *Edwards v. Arizona,* 451 US 477, 101 S Ct 1880, 68 L Ed 2d 378 (1981), the court discussed the appropriate approach for determining the admissibility of a defendant's statement taken after he has requested counsel. Edwards had been arrested for a number of charges and was in custody in the police station. Two detectives advised him of his *Miranda* rights, and when he indicated he understood

them, they began interrogating him. At some point during the questioning, Edwards indicated he wanted an attorney present. The detectives ceased the interrogation, and Edwards was returned to a jail cell. The following day, two different detectives went to the jail and asked to talk to Edwards. He said he did not wish to talk to them. The detectives, however, readvised Edwards of his *Miranda* rights and began questioning him. He subsquently gave an incriminating statement.

The Arizona Supreme Court affirmed Edward's conviction, holding that the statement was voluntary under the totality of circumstances. The United States Supreme Court reversed. The Court stated that the Arizona Supreme Court erred in finding the statement voluntary without addressing the separate and distinct question of whether Edwards had intelligently and knowingly waived the previously asserted right to have counsel present during interrogation. The Court said that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he voluntarily responded to further police-initiated interrogation, even if he was readvised of his rights. In expanding on that holding, the Court said:

> "* * * We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges or conversations with the police." 451 US at 484-85.

In determining whether Edwards had waived the asserted right to have counsel present, the Court distinguished between subsequent conversations initiated by a defendant and by the authorities. It held that the authorities are prohibited from initiating a subsequent conversation after the defendant has indicated a desire to have an attorney present. In highlighting this distinction, the Court said:

> "* * * [W]e do not hold or imply that Edwards was powerless to countermand his election or that the authorities could in no event use any incriminating statements made by Edwards prior to his having access to

counsel. Had Edwards initiated the meeting on [the next day], nothing in the Fifth and Fourteenth Amendments would prohibit the police from merely listening to his voluntary, volunteered statements and using them against him at trial. The Fifth Amendment right identified in *Miranda* is the right to have counsel present at any custodial interrogation. Absent such interrogation, there would have been no infringement of the right that Edwards invoked and there would be no occasion to determine whether there had been a valid waiver. [citation omitted]" 451 US at 485-86.

■■ As stated in *Edwards,* the relevant initial inquiry is not whether defendant freely and voluntarily gave a statement to the police after asserting his right to the assistance of counsel, but whether he knowingly and intelligently waived that previously asserted right. In making a determination of waiver, it is not sufficient that defendant voluntarily makes a statement after asserting his right to counsel. We also learn from *Edwards* that the police may not initiate further exchanges with defendant after he has requested the assistance of counsel. The lead opinion in *Edwards* appears to indicate that if the police initiate the subsequent exchange, in most instances that would constitute a *per se* violation of defendant's constitutional right to counsel. *But see,* the concurring opinion of Justice Powell, 451 US at 488. The Supreme Court's focus on who initiates the subsequent conversation indicates that if defendant is the initiator, that can be a basis from which to conclude he has waived the right to counsel he previously asserted.

■ Applying the rationale of *Edwards* to the case at issue, and assuming the court accepted the facts presented by the state, we conclude that defendant's statements pass constitutional muster on two bases. The first basis is that defendant, by initiating a further contact with a law enforcement agent, waived the right to have counsel present. After defendant was advised of his rights, indicated he understood them and exercised the right to counsel, he requested that the detective call a DEA agent. It appears clear that defendant understood his rights and knew how to exercise them. The city police officers honored those rights and did not initiate any further conversation with defendant about the charge or interrogate him further. It is also

clear from the evidence presented that defendant voluntarily elected to talk to the DEA agent without an attorney present.

■ Defendant argues, citing *State v. Singleton,* 288 Or 89, 602 P2d 1059 (1979), that because Horn did not readvise him of his rights, any finding of waiver would be improper. In *Singleton* the defendant was arrested and taken into custody. He was questioned by police officers three times during a two-day period. Prior to each period of interrogation he was advised of his rights and indicated he understood them. The Supreme Court held he had knowingly and intelligently waived the previously asserted right to counsel. In discussing the requirements of waiver, the court noted as a fact that the defendant had been readvised before each successive questioning. That was a factor in establishing that he knew and understood his constitutional rights. We do not read that opinion as holding that a suspect in custody must be readvised of his rights prior to each new period of interrogation. Readvice is merely one factor in the totality of circumstances to determine if the suspect knew of his rights and intentionally relinquished them.

In this case defendant was advised of his rights and stated he understood them. He demonstrated his understanding by immediately invoking the right to remain silent and to consult with counsel. Ten to fifteen minutes later he requested to talk to the DEA agent and a short time later did in fact talk to the agent. It defies logic to say he understood his rights when they were recited to him and when he expressly exercised them, but that he did not know of his rights fifteen minutes later or subsequently when he talked to Agent Horn. We decline to adopt defendant's contention that, absent a readvice of rights, there can be no waiver of the previously asserted right to counsel.

■ The second basis is that defendant's volunteered statement to Agent Horn was not the product of custodial interrogation. In *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974 (1966), the Court held that the prosecution may not use statements of a defendant stemming from custodial interrogation unless it demonstrates the use of the announced procedural safeguards to

secure the defendant's privilege against self-incrimination. The key question concerning the privilege, as explained in *Rhode Island v. Innis,* 446 US 291, 100 S Ct 1682, 64 L Ed 2d 297 (1980), is not whether a person in custody may talk to the police without the benefit of counsel, but whether he can be interrogated without access to counsel. If there is no custodial interrogation, the statement given can be used without violating the privilege against self-incrimination. The now familiar procedural safeguards announced in *Miranda* are required, not simply because a person is in custody, but because a suspect in custody is subjected to interrogation. In *Rhode Island v. Innis, supra,* the Court said:

"* * * [T]he term 'interrogation' under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. * * *" (Footnote omitted.) 446 US at 301.

In this case defendant requested to talk to the DEA agent and rendered an extensive narrative statement concerning many subjects, including his involvement in the crimes for which he had been arrested. The agent did not ask him any questions or do or say anything that would likely elicit an incriminating response. The agent merely listened to defendant volunteer statements. There was no infringement of the right to counsel previously invoked by defendant.

We have analyzed the issues on the assumption that the trial court accepted the evidence presented by the state. On that assumption, we conclude the court erred in suppressing the statements. If the court, however, based its decision on a rejection of part or all of the uncontradicted evidence, then we are bound by the findings of fact that may fairly be inferred from the court's ruling. *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968). There are thus two bases on which the court may have determined that defendant was entitled to prevail: first, that on the facts as presented by the state, the statements were inadmissible as a matter of law; or, second, that all or portions of the evidence presented were disbelieved by the court. We are

hampered in our review by the lack of findings or an expressed basis for the court's decision. If the court rejected some or all of the state's evidence, it is important to know what the court accepted and what it rejected. Under our analysis, the ultimate decision may depend upon whether the court found defendant did not know or understand his rights, or whether he in fact requested to talk to the DEA agent, or whether Horn in fact interrogated him as that term in defined in *Rhode Island v. Innis, supra.*

In light of our discussion of the relevant legal principles, on the assumption that the evidence presented by the state correctly reflects the facts, defendant should have an opportunity to controvert that evidence, as he requested.

We reverse and remand for further proceedings consistent with this opinion.