Argued and submitted August 31, reversed and remanded
for a new trial December 1, 1981, reconsideration denied January 14,
petition for review denied February 3, 1982 (292 Or 568)

## STATE OF OREGON,
*Respondent,*

*v.*

## JAMES E. BRADSHAW,
*Appellant.*

(No. 20-414, CA A20459)

636 P2d 1011

John Daugirda, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief

were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Gillette, Presiding Judge, and Roberts and Young, Judges.

ROBERTS, J.

## ROBERTS, J.

Defendant appeals his convictions for first degree manslaughter, driving while under the influence of intoxicants and driving while his license was revoked. Defendant contends the trial court erred in failing to suppress statements he made after he requested counsel. We reverse.

Defendant had been asked to accompany an Oregon State Police officer, who was investigating a fatal automobile accident, to the Rockaway Police Department for questioning, and there is no dispute that he went voluntarily. The officer considered defendant a suspect; he was advised he was not in custody and was free to leave. Once at the station, defendant was advised of his *Miranda*[1] rights. He denied involvement with the automobile accident. He was charged with furnishing liquor to a minor and was placed in custody. At this point defendant indicated he wanted an attorney.

Sometime thereafter, either prior to or during the course of his transfer to the Tillamook County jail, defendant inquired of the officer "Well, what is going to happen to me now?" Defendant recalls this was while he was enroute by automobile from the police station to the county jail; the state interprets the record as indicating the query was made while he was still at the police station. The officer testified that he told defendant "You do not have to talk to me * * * since you have requested an attorney, you know, it has to be at your own free will." He said the defendant told him he understood, and, as the officer testified, they "had a conversation from then on." They discussed what defendant would be charged with and where he was going to go. Then, the officer testified, "I believe I put him in the front seat — I am sure of this — so we could talk and then I proceeded to the Tillamook County jail and we had a considerable amount of conversation on the way there." During this time, the police officer reiterated to defendant his own theory of the auto accident, which apparently implicated defendant to some degree. The officer suggested defendant could take a polygraph examination and "clear this matter up." Defendant agreed to talk to the polygraph examiner.

[1] *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694 (1966).

The next day the polygraph examiner, who was not told defendant had requested counsel, administered a polygraph examination. Before the examination, defendant was again advised of his *Miranda* rights and signed a waiver card. After the examination, defendant says, the officer administering the test told him he was not telling the truth and that "they had ways of breaking it down to prove that I was driving the truck." According to the officer's testimony, he told defendant that based on the results of the examination, he did not believe defendant was telling the truth and that he believed defendant was driving the truck at the time of the accident.

The court found that the police made no threats, promises or inducements to talk, that defendant was properly advised of his rights and understood them and that within a short time after requesting an attorney he changed his mind without any impropriety on the part of the police. The court held that the statements made to the polygraph examiner were voluntary and the result of a knowing waiver of his right to remain silent.

■ ■ While we are bound by the historical facts as found by the trial court, where they are supported by the evidence, the question of whether defendant knowingly and intelligently waived his right to counsel is a question to be determined by this court pursuant to our duty to interpret constitutional standards and require conformance thereto. *Ball v. Gladden,* 250 Or 485, 488, 443 P2d 621 (1968). This case is controlled by the recent decision of the U. S. Supreme Court in *Edwards v. Arizona,* 451 US 477, 101 S Ct 1880, 68 L Ed 2d 378 (1981); we hold that the statements defendant made to police were not made after a valid waiver of his rights.

In *Edwards* the defendant was arrested pursuant to a warrant and taken to the police station, where he was informed of his *Miranda* rights. After giving a taped statement presenting an alibi defense, he asked for an attorney "before making a deal." Police ceased the questioning, and defendant was taken to jail. The next morning, two detectives, who were colleagues of the officer who interrogated Edwards the day before, arrived at the jail and asked to see him. Edwards told the detention officer he did not want to

talk to anyone and was told "he had" to talk to the detectives. After being advised again of his *Miranda* rights, Edwards confessed. The trial court found that "the waiver and confession were voluntarily and knowingly made." The Supreme Court held that the use of the confession violated Edwards' rights under the Fifth and Fourteenth Amendments, as construed in *Miranda,* and reversed.

The crux of the court's opinion is as follows:

"* * *[W]e now hold that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused * * * having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, *unless the accused himself initiates further communication, exchanges or conversations with the police.* " (Footnotes omitted.) (Emphasis supplied.) 68 L Ed 2d at 386.

We do not construe defendant's question about what was going to happen to him to have been a waiver of his right to counsel, invoked only minutes before, or anything other than a normal reaction to being taken from the police station and placed in a police car, obviously for transport to some destination. Though a conversation ensued, the police officer clearly took advantage of the opening to reinterrogate defendant about his culpability and suggest the lie detector test, which was administered the next day.

The administration of the lie detector test and the subsequent interrogation of defendant were not at his suggestion or request, but were at the instance of authorities. The *Edwards* court emphasized that

"it is inconsistent with *Miranda* and its progeny for authorities, *at their instance,* to reinterrogate an accused in custody if he has clearly asserted his right to counsel." (Emphasis supplied.) 68 L Ed 2d at 387.

Thus, under the reasoning enunciated in *Edwards,* defendant did not make a valid waiver of his Fifth Amendment rights, and his statements were inadmissible.

Reversed and remanded for a new trial.