Argued and submitted November 12, 1981, reversed
and remanded for a new trial April 5, 1982

STATE OF OREGON,
*Respondent,*

*v.*

DAVID ANDREW TAYLOR,
*Appellant.*

(No. C80-11-34256, CA A21308)

643 P2d 379

J. Marvin Kuhn, Chief Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Gillette, Presiding Judge, Joseph, Chief Judge, and Roberts, Judge Pro Tempore.

GILLETTE, P. J.

## GILLETTE, P. J.

This is a criminal case in which defendant was charged with the crimes of attempted murder, assault in the first degree and unlawful use of a motor vehicle. A jury found defendant not guilty of attempted murder, but guilty of the other two charges. He appeals the judgment entered on those two charges, contending that: (1) police improperly obtained a statement from him after he had asked for counsel; (2) the assault and unlawful use charges should have been severed; and (3) the court erred in refusing to give certain lesser included offense instructions relating to the assault charge. We reverse and remand for a new trial.

### FACTS

On November 18, 1980, the victim in this case, Mansell, crawled to a neighbor's house. He had been severely beaten. In his home, Multnomah County investigators found evidence that another person had been staying there. A steam iron and a tree limb, both with Mansell's blood on them, were also found. Mansell's wallet and car were missing; police issued an APB for the car.

That evening, defendant, in the company of another man, was arrested at a Eugene shopping center and charged with forgery in connection with the use of one of Mansell's credit cards. Mansell's car was found in the center's parking lot.

One of the arresting Eugene Police officers, Officer Michard, advised defendant of his rights. Defendant refused to answer any questions and asked to speak with an attorney. Both defendant and his companion were lodged in jail at approximately 9:15 p.m. on November 18. After discussion between Multnomah County authorities and the Eugene Police Department, defendant and his companion were charged with attempted murder and car theft early on the morning of November 19. The officer who apprised defendant of this development attempted to question him about the new charges at the time, but defendant indicated that he did not wish to talk.

Later on the 19th, Detective Mollahan of the Multnomah County Sheriff's office, in the company of Detective Linhares of the Portland Police Bureau, went to

Eugene to interview defendant. Prior to the interview, Mollahan read Officer Michard's report of defendant's arrest. The report stated, *inter alia,* that defendant had been advised of his rights, understood them and had asked to speak to an attorney.

In the interview, Mollahan and Linhares, after readvising defendant of his rights, asked him if he was willing to talk about the Mansell incident and another, unrelated matter. Neither officer specifically asked to discuss the credit card matter, and neither alluded to defendant's prior request for an attorney. Defendant asked the officers, "Do you guys think I should talk to an attorney about this?" Mollahan answered, "That is completely up to you." Defendant agreed to talk and gave an inculpatory statement. After defendant's motion to suppress was denied, the statement was used at trial.

## STATEMENT

■ Defendant contends that his statement to Mollahan and Linhares should be suppressed because, after he had asked for an attorney, the police were not entitled to interrogate him further. He relies upon *Edwards v. Arizona,* 451 US 477, 484, 101 S Ct 1880, 68 L Ed 2d 378 (1981), where the Supreme Court said,

"* * * [A]lthough we have held that after initially being advised of his Miranda rights, the accused may himself validly waive his rights and respond to interrogation, * * * the Court has strongly indicated that additional safeguards are necessary when the accused asks for counsel; and we now hold that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation * * * by the authorities unless the accused himself initiates further communication, exchanges or conversations with the police." (Footnote omitted.)

The state acknowledges the relevance of *Edwards,* but asserts several theories for its inapplicability here:

1. The state first relies upon the earlier decision of *Michigan v. Mosley,* 423 US 96, 96 S Ct 321, 46 L Ed 2d 313 (1975), saying that "* * * the only real question presented by the police interrogation in this case is whether

*Mosely* was impliedly overruled \* \* \* in *Edwards* \* \* \*." Unlike the state, we perceive no conflict between *Mosley* and *Edwards*. In *Mosley,* an armed robbery suspect who was re-interviewed by police after once refusing to talk had merely invoked his right to *remain silent,* not his right to *counsel. Michigan v. Mosley, supra,* 423 US at 102 n 7. The court specifically adverted to this distinction, and the different rules which flow from it in *Edwards.* 451 US at 485. *Mosley* does not aid the state here.

2. The state next argues that here, unlike *Edwards,* the trial court correctly focused on whether defendant understood his right to counsel and intelligently and knowingly relinquished it. We agree that the Arizona trial court's approach to the case in *Edwards* was not as sophisticated as that used here. We nevertheless find no basis in *Edwards* for distinguishing the two situations on that basis.

3. The state next argues that the facts of this case call for a different result in that here, unlike in *Edwards,* defendant was not told he "had to" talk to the police. Assuming that such a distinction could be made, the language from *Edwards* quoted *supra* establishes that the Supreme Court would not make it. If it would not, we are not free to do so.

4. The state next argues that *Edwards* should not be applied, because the charges about which defendant was interrogated were different from those with which defendant was charged at the time he asked for counsel. Assuming without deciding that there may arise some circumstances in which subsequent police-initiated custodial conversation with an accused will be permissible if it relates to matters remote from those which gave rise to a defendant's exercise of his right to counsel, this is not such a case. Here, all charges arose out of or at least were directly, factually related to the same concatenation of facts which gave rise to the original forgery charge. *Cf.* ORS 132.560(2). The police officers were aware that, with respect to one of the charges, defendant had asked for counsel. That was enough to trigger the rule established in *Edwards.* To rule otherwise might encourage law enforcement officers to select minor charges as a basis for an arrest, when major

charges could be brought, in order to have more than one "shot" at an arrestee who at first refuses to talk and asks for counsel.

■ 5. Finally, the state argues that, if *Edwards* is otherwise applicable, it should not be applied retroactively to the rulings in this case, which were made prior to the date *Edwards* was decided. If *Edwards* established some wholly new principle of law, there might be merit to the state's point. *See Johnson v. New Jersey,* 384 US 719, 86 S Ct 1772, 16 L Ed 2d 882 (1966). We find it clear, however, that *Edwards* is merely a clarification of the rule established in *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694 (1966), and not the announcement of some wholly new and unanticipated principle. *See Edwards v. Arizona, supra,* 451 US at 485.

■ Defendant's motion to suppress his statement given to Mollahan should have been granted. The error was not harmless.

Reversed and remanded for a new trial.[1]

---

[1] Defendant's second assignment of error, that the trial court erred in denying severance of the assault and unauthorized use charges, is not well taken in view of the unusual and complete way the evidence of the two charges is intertwined. His third assignment, concerning the giving of certain lesser included offense instructions, is not well taken in view of defendant's own testimony.