Argued and submitted March 15, convictions affirmed, remanded for resentencing on murder conviction December 15, 1982, reconsideration denied March 11, petition for review denied May 3 (294 Or 792), reconsideration of denial allowed June 7, 1983, review denied February 15, 1984 (296 Or 486)

## STATE OF OREGON,
*Respondent,*

*v.*

## WILLIAM PERRY JACKSON,
*Appellant.*

(No. C80-08-32889, CA A20371)

655 P2d 592

John Daugirda, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

RICHARDSON, P. J.

Van Hoomissen, J., dissenting in part; concurring in part.

## RICHARDSON, P. J.

Defendant appeals his convictions for murder, felony murder and burglary. He challenges the admission of his statements made to police while in custody, the denial of his motion for change of venue, the admission of certain photographs and the sentence imposed. We affirm his convictions and remand for resentencing on the murder conviction. The facts of the crimes need not be set out in addressing the assignments of error.

In his first assignment, defendant contends that the trial court erred in denying his motion to suppress statements made to police officers while he was in custody. The trial court made findings of fact respecting interviews defendant had with several police officers. The findings, which are all supported by evidence in the record, are as follows:

### "FINDINGS OF FACT

"1. The defendant was arrested on August 21, 1980, at approximately 11:00 a.m. on a charge of Kidnapping in the First Degree pursuant to a warrant for his arrest issued by the Circuit Court of the State of Oregon for Washington County. He was arrested at his parents' home in Clackamas County.

"2. Promptly after his arrest, defendant was fully advised of his *Miranda* rights by FBI Agent Alan Gough. Agent Gough did not question defendant about the crime.

"3. Defendant was taken to the Washington County Public Safety Building and at 1:12 p.m. was again advised of his *Miranda* rights by Detective Juul. Defendant signed a written waiver of his rights and agreed to talk to detectives about a murder in Lincoln County.

"4. At 3:15 p.m. on August 21, 1980, defendant was again advised of his *Miranda* rights by Officer Alford of Clackamas County and again defendant signed a waiver of his rights. They discussed a Clackamas County Assault case.

"5. At 7:00 p.m. on August 21, 1980, defendant was again advised of his *Miranda* rights by Trooper Rainey of the Oregon State Police and again defendant signed a waiver of his rights and agreed to talk to police. They discussed a Tillamook County Murder.

"6. On August 22, 1980, Detectives Dorney and Orr of the Portland Police Bureau interviewed defendant at 3:05 p.m. and again at 6:40 p.m. Prior to each interview, defendant was advised of his *Miranda* rights and had signed a written waiver of those rights (State's Ex. No. 28). Each interview was tape recorded.

"7. That on August 22, 1980, at about 4:10 p.m., defendant appeared before the Honorable Karl Freerksen, Jr., of the District Court of. the State of Oregon for Washington County. The court advised the defendant that a complainant's information·of felony had been filed charging him with Kidnapping in the First Degree, of his right to counsel and his right to remain silent. Counsel was appointed for defendant at that time. The court conducted defendant's initial appearance in compliance with ORS 135.070 and did not delay that hearing to gain some advantage over defendant.

"8. That at no time during questioning in this case did the defendant ever assert his right to counsel *or* his right to remain silent. Nor did the state interfere with his right to consult with counsel.

"9. All of the above interviews were conducted in modern rooms which were clean and well-lighted.

"10. No promises or threats were made to the defendant. The defendant was not physically abused.

"11. The defendant was not deprived of food, sleep, water, or other necessity." (Emphasis in original.)

The inculpatory statement made to the Portland police officers on August 22, 1980, subsequent to defendant's arraignment, is the subject of his motion to suppress.

Defendant contends that the statement was inadmissible, "because it was the result of police initiated interrogation made after defendant had requested counsel at his arraignment, and before he had the opportunity to consult with counsel." Defendant's argument relies on *Edwards v. Arizona,* 451 US 477, 101 S Ct 1880, 68 L Ed 2d 378 (1981), interpreting *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694 (1966).

There is no question but that an accused has the right under the Sixth and Fourteenth Amendments to the United States Constitution to the assistance of counsel. The United States Supreme Court described that right in

*Brewer v. Williams,* 430 US 387, 97 S Ct 1232, 51 L Ed 2d 424 (1977):

> "* * * Whatever else it may mean, the right to counsel granted by the Sixth and Fourteenth Amendments means at least that a person is entitled to the help of a lawyer at or after the time that judicial proceedings have been initiated against him—'whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.' * * *" 430 US at 398.

That a defendant has obtained counsel does not, by that fact alone, render inadmissible all subsequent confessions made when counsel is not present. Having counsel present during an interrogation is only one aspect of the right to assistance of counsel. Assistance of counsel in defending the charge or in responding to interrogation can be waived. There is no *per se* rule as suggested in *Massiah v. United States,* 377 US 201, 84 S Ct 1199, 12 L Ed 2d 246 (1964), that once counsel is appointed or retained no interrogation of the accused is proper.[1] In *Moore v. Wolff,* 495 F2d 35, 37 (8th Cir 1974), the court said:

> "If an accused can voluntarily, knowingly, and intelligently waive his right to counsel before one has been appointed, there seems no compelling reason to hold that he may not voluntarily, knowingly, and intelligently waive his right to have counsel present at an interrogation after counsel has been appointed. * * *"

That principle was reiterated in *Williams v. Brewer,* 509 F2d 227 (8th Cir 1974), by the Court of Appeals and by the Supreme Court in *Brewer v. Williams, supra. See also State v. Quinn,* 290 Or 383, 399, 623 P2d 630 (1981).

The issue then is whether defendant, having had counsel appointed to assist him, waived the presence of his attorney during the subsequent interrogation. Defendant argues that his requesting counsel at the time of his arraignment was tantamount to an assertion of the right to assistance of counsel at the subsequent interrogation and

---

[1] In *Massiah,* the Court said:

"* * * We hold that the petitioner was denied the basic protections of that guarantee [right to counsel] when there was used against him at his trial evidence of his own incriminating words, which federal agents had deliberately elicited from him after he had been indicted and in the absence of his counsel. * * *" 377 US at 206.

that, consistent with *Edwards,* the police could not initiate the questioning. In *Edwards,* the Supreme Court said:

> "* * * [W]e now hold that *when an accused has invoked his right to have counsel present during custodial interrogation,* a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges or conversations with the police." 451 US at 484-85. (Footnote omitted; emphasis supplied.)

Defendant acknowledges that the Oregon Supreme Court has expressly rejected "a more protective rule which absolutely bars any questioning once a lawyer is appointed or retained." *See State v. Quinn, supra.* However, he argues that *Edwards* "modifies" *Quinn, i.e.,* that now a defendant who has appointed or retained counsel may waive the right to assistance of counsel only by his own initiation of communication with the police.

*Edwards* cannot be read so broadly as defendant urges. It interprets the Fifth Amendment right to have counsel present at any custodial interrogation under *Miranda v. Arizona, supra.* 451 US at 486-87. Nothing in the Court's opinion suggests that the appointment of counsel, pursuant to the Sixth Amendment right to the assistance of counsel, automatically triggers the application of the rule announced in *Edwards.* Indeed, *Edwards* concerned a defendant who had specifically invoked his right to have counsel present at the custodial interrogation. Our cases applying *Edwards* similarly concern defendants who had requested the presence of counsel before speaking to the police. *See State v. Taylor,* 56 Or App 703, 643 P2d 379 (1982); *State v. Bradshaw,* 54 Or App 949, 636 P2d 1011 (1981), *rev den* 292 Or 568 (1982); *State v. Fuller,* 54 Or App 815, 636 P2d 447 (1981), *rev den* 292 Or 356 (1982). Thus, *Edwards* furnishes no basis for deviating from *State v. Quinn, supra,* which expressly rejected defendant's argument.

This case is factually distinguishable from *State v. Taylor, supra,* where the defendant was charged with attempted murder, assault and unauthorized use of a motor vehicle. The victim had been beaten, and his vehicle and a wallet containing his credit cards had been taken. The defendant was subsequently arrested for forgery when he attempted to use the credit cards. Following his arrest, he was advised of his rights. He refused to answer any questions and demanded to speak to an attorney. Subsequently, officers from another police department contacted him in jail and, after advising him of his rights, asked if he would answer questions regarding the assault of the victim. The defendant asked "Do you guys think I should talk to an attorney about this?" The officer replied that it was entirely up to the defendant. The defendant then gave an incriminating statement.

We held that *Edwards* was directly applicable, because defendant had requested the assistance of an attorney during interrogation. We also held that *Edwards* applied even though the defendant was questioned on a charge different from that with which defendant was charged when he requested counsel.

■ In *Taylor,* unlike the case at issue, the defendant had specifically requested the assistance of counsel during interrogation. In this case, defendant had never requested the aid of counsel for any of the separate interrogations. In each instance he had specifically waived the right to have counsel present. That factual distinction supports a different result in this case. Defendant had asserted his general Sixth Amendment right to have counsel assist him in defending the charges. He had not asserted, even after appropriate advice, his right to have counsel present during the questioning. Requesting the appointment of counsel at arraignment is not necessarily a request for assistance of counsel during subsequent questioning. The two types of legal assistance are distinct aspects of the general right to counsel, and each may be separately asserted or waived.

■ Defendant next contends that, in any event, his statements should have been suppressed, because he made them involuntarily. The facts as found by the trial court are to the contrary. The evidence in the record supports the

historical factual findings, *Ball v. Gladden,* 250 Or 485, 487, 443 P2d 621 (1968), and we agree with the trial court's conclusion that the statements were voluntary. The court did not err in denying defendant's motion to suppress.

■ Defendant's second assignment of error is the denial of his motion for change of venue. The basis of the motion was that heavy press, television and radio coverage in Multnomah County generated by the burglary and homicide and by defendant's arrest made "a fair trial * * * impossible." *See* ORS 131.355. The trial court denied the motion after making the following findings of fact:

"1. The press coverage of the crime in Multnomah County was not pervasive.

"2. The press coverage of the crime was factual and not biased against the defendant.

"3. Material released by state officials prior to trial complied strictly with press bar guidelines and ABA standards relative to fair trial and free press.

"4. There does not exist in Multnomah County so great a prejudice against the defendant that he cannot obtain a fair trial."

There is no indication that the trial court abused its discretion. *See State v. Darnall,* 47 Or App 161, 165-66, 614 P2d 120 (1980); *State v. Herrera,* 32 Or App 397, 401-02, 574 P2d 1130 (1978), *rev'd on other grounds,* 286 Or 349, 594 P2d 823 (1979).

Defendant next assigns as error the admission in evidence of photographs of the homicide victim. He argues that the prejudicial effect of the photographs outweighs their probative value, because he was willing to stipulate as to the identity and the cause of death of the victim. Therefore, he argues, only his culpable mental state was at issue, and for that the photographs are not relevant.

■ Most of the photographs at issue were admitted in conjunction with the testimony of a medical examiner in order to illustrate the pathology terms he used in describing the nature and extent of the victim's wounds. One photograph, taken at the scene of the homicide, shows only the victim's forearm bound with an electric cord. All of the photographs help demonstrate defendant's state of mind.

The trial court did not abuse its discretion by refusing to exclude the photographs from evidence. *State v. Benfield,* 53 Or App 355, 632 P2d 26 (1981); *State v. Reams,* 47 Or App 907, 914-16, 616 P2d 498 (1980), *aff'd* 292 Or 1, 636 P2d 913 (1981).

Defendant's final assignment is that the court erred in imposing a minimum 25-year term of imprisonment for murder. The sentence is improper. *State v. Shumway,* 291 Or 153, 630 P2d 796 (1981).

Defendant's convictions are affirmed, and the case is remanded for resentencing on the murder conviction.

**VAN HOOMISSEN, J.,** dissenting in part and concurring in part.

I would hold that the trial court committed reversible error when it refused to suppress statements made by defendant to the police during the 6:40 p.m. interrogation on August 22, 1980.

Although I accept the trial court's historical factual findings, *Ball v. Gladden,* 250 Or 485, 488, 443 P2d 621 (1968), the evidence here does not support the court's conclusion that the state carried its burden to prove that defendant knowingly and intelligently waived his rights to counsel and to remain silent.[1] *See Johnson v. Zerbst,* 304 US 458, 464, 58 S Ct 1019, 82 L Ed 1461 (1938); *State v. Singleton,* 288 Or 89, 602 P2d 1059 (1979). Therefore, I reject that conclusion. *See State v. Davie,* 56 Or App 507, 513, 642 P2d 680, *rev den* 293 Or 146 (1982).

Defendant testified that after he was arrested, he twice indicated he wanted an attorney and that the police held him in custody for more than 29 hours before he was brought before a judge, who then appointed counsel.[2]

---

[1] The question of waiver is not one of historical fact but one that requires the application of constitutional principles to the facts found. *Brewer v. Williams,* 430 US 387, 403, 97 S Ct 1232, 51 L Ed 2d 424 (1977).

[2] The trial judge found:

"8. That at no time during questioning in this case did the defendant ever assert his right to counsel or his right to remain silent. Nor did the state interfere with his right to consult with counsel."

It is not clear to me whether this finding was intended to encompass the entire period defendant was under arrest (from approximately 11 a.m. on August 21,

Defendant's parents likewise were frustrated in their efforts to secure an attorney for him. His step-father testified that he had contacted the Washington County Sheriff's Office and expressed his interest in seeing that defendant had an attorney. He said that the police brushed off his questions about an attorney, saying that an attorney would be appointed later.[3] In the meantime, teams of police from several jurisdictions were interrogating defendant about various crimes.

When defendant was arraigned in District Court, the judge advised him that he had a right to an attorney. He asserted that right, and the judge appointed an attorney. An attorney-client relationship was thereby created. The police and the prosecutor were aware that an attorney had been appointed.[4]

---

1980), or only the period of "questioning in this case." If the former, it is inconsistent with defendant's testimony. If the latter, however, it is not inconsistent with that testimony.

[3] Defendant's stepfather testified that on learning of defendant's arrest he called Captain Cleve at the Washington County Sheriff's Department and asked him if defendant had an attorney and if he and his wife could visit their son. Cleve answered:

> "Hey, [defendant's] been taken care of very nicely. He will have a court-appointed attorney and I will be back in touch with you if there's any changes."

When the step-father told Cleve that he wanted to hire an attorney to be present with defendant because of the serious charges, Cleve advised him:

> "[Defendant] would have an attorney appointed and that they went into detail that he had to be an adequate attorney and he had to have tried, you know, capital cases and et cetera and et cetera."

Cleve denied defendant's parents' request to visit defendant at that time.

[4] Detective Dorney testified that he knew counsel would be appointed for defendant at his arraignment. He did not check with anyone to determine who had been appointed. Detective Orr testified that he knew an attorney would be appointed at defendant's arraignment. After Dorney and Orr had interrogated defendant the first time, Orr contacted Deputy District Attorney Sheldahl and informed him that he had interrogated defendant concerning this case. Sheldahl instructed Orr to reinterview defendant and "get specific details regarding the actions of [defendant]." Orr informed Sheldahl that defendant was being arraigned at that time.

Sheldahl testified that he had received a telephone call from Detective Orr about 3:30 p.m. on August 22, 1980. Orr informed Sheldahl that defendant had been interrogated and that his statement had been taped. Sheldahl instructed Orr to "go back, reinterview the defendant, and obtain, if he could, a blow-by-blow description of what had occurred in as much detail as he could get." Sheldahl

About 6:40 p.m., before defendant had had an opportunity to meet with his attorney, Detectives Dorney and Orr *initiated* contact with defendant in hope of continuing their interrogation.[5] The majority holds that defendant waived his right to counsel, because he did not invoke that right during the 6:40 p.m. interrogation. It is fundamental that the right to counsel means the right to the effective assistance of counsel. What could be more antithetical to the effective assistance of counsel than an uninvited custodial interrogation before defendant had had an opportunity to confer with his appointed counsel? I find

---

knew that defendant was being arraigned and that an attorney would be appointed for defendant at the arraignment. Sheldahl testified that after he was advised that attorney Alexander was appointed to represent defendant he instructed the detectives not to interview defendant unless they went through him and he contacted Mr. Alexander. Sheldahl testified:

"Q. That's the way you wanted that interview conducted after an attorney was appointed; is that right?

"A. After I had knowledge that he had an attorney, yes, sir. As a member of the Bar, like yourself, I don't contact adverse parties except through their counsel.

" * * * * *

" * * * [O]nce I knew an attorney was appointed, I asked Detectives Dorney and Orr not to contact Jackson without advising me.

" * * * * *"

Sheldahl apparently reasoned that his ethical obligation did not commence until he knew the *name* of defendant's court-appointed attorney. I know of no authority for such a narrow interpretation of the rule.

[5] In *Edwards v. Arizona,* 451 US 477, 101 S Ct 1880, 68 L Ed 2d 378 (1981), the Supreme Court emphasized that:

" * * * it is inconsistent with Miranda [*v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694 (1966)] and its progeny for the authorities, at their instance, to reinterrogate an accused in custody if he has clearly asserted his right to counsel." 451 US at 485.

*Edwards* is factually distinguishable. Nevertheless, I conclude that it supports defendant's contention.

Detectives Dorney and Orr first interrogated defendant about 1:55 p.m. on August 22, 1980. They took a taped statement from him from 3:05 p.m. until about 3:27 p.m. The second interrogation commenced about 6:40 p.m. and was concluded about 7 p.m. Orr denied that they were trying to reinterrogate defendant before an attorney had had an opportunity to talk to him. Orr testified that:

" * * * we interviewed him in close proximity because we know that we would lose our memory of the first interview if we delayed too much longer."

Orr was hard-pressed to explain that answer in view of the fact that the detectives had a tape of defendant's earlier statement.

it difficult to believe that a defendant who had formally invoked his right to counsel in court less than three hours earlier, and who had been informed by the judge that an attorney would be appointed for him, was required to *reinvoke* his right to counsel before he had had any opportunity to consult with his court-appointed attorney. It is self-evident that defendant's right to counsel was not "scrupulously observed." *Michigan v. Mosley,* 423 US 96, 104, 96 S Ct 321, 46 L Ed 2d 313 (1975); *United States v. Rodriguez-Gastelum,* 569 F2d 482 (9th Cir), *cert den* 436 US 919 (1978).

The Supreme Court's decision in *State v. Haynes,* 288 Or 59, 602 P2d 272 (1979), and our decisions in *State v. Taylor,* 56 Or App 703, 643 P2d 379 (1982); *State v. Bradshaw,* 54 Or App 949, 636 P2d 1011 (1981), *rev den* 292 Or 568, *cert allowed* ___ US ___ (1982), and *State v. Fuller,* 54 Or App 815, 636 P2d 447 (1981), *rev den* 292 Or 356 (1982), are all consistent with a conclusion that it was error to deny defendant's motion to suppress the statement made after the appointment of counsel.

I would hold that once the police know that a person in custody on a formal charge is represented by counsel, the police may not *initiate* contact with that person for the purpose of interrogation. Because the statements made by defendant during the 6:40 p.m. interrogation on August 22, 1980, were made in violation of this rule, they should have been suppressed. *Edwards v. Arizona,* 451 US 477, 101 S Ct 1880, 68 L Ed 2d 378 (1981); *United States v. Henry,* 447 US 264, 100 S Ct 2183, 65 L Ed 2d 115 (1980); *Rhode Island v. Innis,* 446 US 291, 100 S Ct 1682, 64 L Ed 2d 297 (1980); *Brewer v. Williams,* 430 US 387, 97 S Ct 1232, 51 L Ed 2d 424 (1977); *Massiah v. United States,* 377 US 201, 84 S Ct 1199, 12 L Ed 2d 246 (1964).[6]

I concur with the majority's disposition of defendant's other assignments of error.

---

[6] The conclusion I have reached is consistent with the rationale expressed by Denecke, C. J., in his dissenting opinions in *State v. Atherton,* 242 Or 621, 629, 410 P2d 208, *cert den* 384 US 1025 (1966); *State v. Rosenburger,* 242 Or 376, 380, 409 P2d 684 (1966); *State v. Sanford,* 245 Or 397, 406, 421 P2d 988 (1966); and *State v. Whitewater,* 251 Or 304, 308, 445 P2d 594 (1968).