Argued and submitted July 24, 1985, reversed and remanded for new trial May 14, 1986

# STATE OF OREGON,
*Respondent,*

*v.*

# ROBERT TROY STAUNTON,
*Appellant.*

(33238, 33235, 33237;
CA A33556 (Control), A33557, A33558)
(Cases Consolidated)

718 P2d 1379

Carla D. Thompson, Salem, argued the cause for appellant. With her on the brief was Gary D. Babcock, Public Defender, Salem.

Jeff Bennett, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General and James E. Mountain, Jr., Solicitor General, Salem.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

NEWMAN, J.

## NEWMAN, J.

Defendant appeals his conviction on three counts of burglary. His principal assignment of error is that the court refused to suppress statements that he made to Officer Kohlmeyer of the Salem Police. We reverse and remand for a new trial.

At approximately 6 a.m. on March 29, 1984, Salem police officers received a call to investigate an automobile accident in Salem. Officer Harrell first arrived at the scene, followed by Officer Behrens moments later. The trial court entered these findings of fact:

> "When they arrived they found the defendant to be extremely intoxicated and sitting in the front seat of the automobile. He had just vomited, had bloodshot eyes, smelled strongly of alcohol, had a 'real dull look', slurred speech, staggered when he walked, passed out occasionally and experienced mood changes from cooperative to hostile. The officers checked the vehicle's license with their records and learned that it had been stolen in a burglary. This burglary is the one charged in case number 33237. The officers immediately placed the defendant under arrest for Unauthorized Use of a Motor Vehicle, Driving Under the Influence of Intoxicants, Driving Without an Operator's License and Driving the Wrong Way on a One Way Street. The defendant was handcuffed and placed in the back of a patrol car."

The trial court also found:

> "After defendant was arrested, but while he was still at the scene of the accident, Officer Custer of the Salem Police Department advised the defendant of his constitutional rights from a prepared rights card. *Custer then asked the defendant if he wanted to talk. The defendant responded, 'No, I want to talk to an attorney'.* Custer ceased his questioning of the defendant at that time." (Emphasis supplied.)

The police took defendant to Salem Memorial Hospital for treatment and then to the Marion County Jail. During the transportion and while he was at the hospital and jail, the police questioned him. He made statements regarding his intoxication; he also admitted that he had stolen the car. The trial court suppressed those admissions, and they are not in issue.

Later that morning, Kohlmeyer, who was responsible

for investigation of residential burglaries, was informed that the car that defendant had been driving just before he was arrested had been stolen in a burglary of the Elling residence 28 days before defendant's arrest. Kohlmeyer contacted Elling and received permission to search her automobile. Although he discovered no other evidence of the Elling burglary, he found a motel room key that connected defendant with a reported kidnap and rape.

At approximately 2:10 p.m. that afternoon, Kohlmeyer initiated contact with defendant at the jail and read him *Miranda* warnings from a printed card.[1] Defendant said that he understood his rights, had no questions about them and signed the printed card. Kohlmeyer then questioned him about his involvement in the Elling burglary and the kidnap and rape. Defendant said that he was willing to discuss the burglary and the theft of the car. During the questioning, which lasted 15 to 20 minutes, he admitted that he had broken into the Elling residence and had taken 20 dollars and the car. He did not resist questioning or ask to speak with an attorney at any time during the interrogation. Kohlmeyer testified that he "was real cooperative." At the close of the interrogation Kohlmeyer told defendant that he would be back in contact with him.

The following day, March 30, 1984, Kohlmeyer initiated two more interviews. In the first, at 12:50 p.m., he read defendant the *Miranda* warnings again, and defendant again acknowledged that he understood them. They had a short conversation regarding the Elling burglary, and then Kohlmeyer asked if he had been involved in other burglaries. Defendant indicated that there were four or five other burglaries and wanted to know whether Kohlmeyer could "make a deal" if he talked. Kohlmeyer said that he could not make a deal but that he would contact the district attorney. Because the Elling burglary had occurred in Polk County, Kohlmeyer contacted the Polk County district attorney's office.

At 1:25 p.m. Kohlmeyer again contacted defendant and explained that there could be no negotiations at that point. He again read the *Miranda* warnings, and defendant

---

[1] Defendant had not been arraigned on the DUII or UUMV charges at this time, nor was he at any subsequent relevant time.

signed the warning card. He then admitted other burglaries and gave Kohlmeyer a tape recorded statement. He then agreed to accompany Kohlmeyer in the field, where he identified two homes, other than the Elling residence, that he had burglarized. Defendant did not ask to speak with an attorney at any time during the two March 30 interviews. On April 11, 1984, he was indicted for the three burglaries. In a consolidated trial to the court on stipulated facts he was found guilty on each charge.

Defendant argues that Kohlmeyer's initiation of discussions with him after his assertion of his right to the assistance of counsel at a custodial interrogation violates both Article I, section 12, and the Fifth Amendment. *Edwards v. Arizona,* 451 US 477, 101 S Ct 1880, 68 L Ed 2d 378 (1981); *State v. Kell,* 77 Or App 199, 712 P2d 827 (1986). In *Edwards,* the Court held, under the Fifth Amendment:

> "[W]hen an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." 451 US at 484. (Footnote omitted.)

In *Kell* we adopted the *Edwards* rule under Article 1, section 12.

Relying on *State v. Sparklin,* 296 Or 85, 672 P2d 1182 (1983), however, the state asserts that the *Edwards* rule is not applicable to custodial interrogation concerning charges *unrelated* to those about which a defendant asserts his right to counsel. It argues that, because defendant's request for counsel related to charges stemming from the traffic accident, the police could initiate custodial interrogation concerning the burglaries, which it contends are factually unrelated to the charges stemming from the traffic accident.

In *Sparklin* the court held that, if a defendant has counsel, the police may not interrogate him "concerning the events surrounding the crime charged unless the attorney

representing the defendant on that charge is notified and afforded a reasonable opportunity to attend." 296 Or at 93. The court also held, however, that police do not violate Article I, section 11, or the Sixth Amendment when they initiate discussions with a suspect who is in custody and represented by counsel on *unrelated* charges. 296 Or at 98.

■    We need not decide whether a similar "unrelated-ness" exception to the general rule of non-initiation applies when a suspect at a custodial interrogation asserts his right to counsel under Article I, section 12, because the Elling burglary was related to the original charges against defendant.[2] Crimes are "related" if they arise out of or are factually related to the same "concatenation of facts" which give rise to the original charges. *State v. Taylor,* 56 Or App 703, 707, 643 P2d 379 (1982). We define "relatedness" broadly, for to do "otherwise might encourage law enforcement officers to select minor charges as a basis for an arrest, when major charges could be brought, in order to have more than one 'shot' at an arrestee who at first refuses to talk and asks for counsel." 56 Or App at 707.

The facts in *Taylor* are analogous to the facts here. There the defendant was arrested in Lane County for a forgery, after he had attempted to use a credit card that he had stolen in Portland. He refused to answer police questions concerning the forgery and asked to speak with an attorney. Subsequently, officers from Portland contacted him in jail in Lane County and, after advising him of his rights, asked if he would answer questions concerning the robbery and assault of the credit card's owner in Portland. The defendant then made incriminating statements. We held, however, that the robbery and assault and the forgery were sufficiently related to pre-clude the Portland police from initiating interrogation about the robbery and assault after the defendant had asked for the assistance of counsel at custodial interrogation concerning the forgery.

■    Here, defendant was initially charged, among other

---

[2] Although we assumed this rule in *State v. Taylor,* 56 Or App 703, 707, 643 P2d 379 (1982), we also reserved decision there.

things, with unauthorized use of a motor vehicle.[3] He asserted his right to counsel, but the police then questioned him about the burglary of the Elling premises, from which the motor vehicle was stolen. Like the credit card in *Taylor,* the car is the factual link that relates the charges here. In *State v. Sparklin, supra,* a comparable factual link was lacking. The burglary and the original charge of unauthorized use of the stolen Elling car arose out of the same "concatenation of facts." Accordingly, Kohlmeyer's initiations of discussions about the Elling burglary were impermissible, and defendant's statements should have been suppressed under Article I, section 12.[4]

■■■ The state argues that there is no support in the record for the trial court's finding that, at the time of the initial arrest, the arresting officer knew that the car had been stolen *in a burglary,* although the state does not assert that the officer did not know, as the court found, that the car was stolen. The "relatedness" test, however, is not dependent upon the subjective understandings of the police. The issue is whether the crimes are in fact related to the facts which give rise to the original charges, not whether the police thought that the crimes were not related or did not know that they were related. When the police initiate questioning of a suspect who has requested counsel, they take the chance that the crimes about which they interrogate are related and that the questioning, therefore, is impermissible.

■■ As for defendant's statements respecting the other two burglaries, even if they were factually unrelated to the initial charges against defendant, they too should have been suppressed. Evidence that results from illegal police conduct cannot be used. *State v. Quinn,* 290 Or 383, 396, 623 P2d 630 (1981). This proscription covers testimonial evidence as well as physical evidence. *State v. Jones,* 248 Or 428, 432, 435 P2d 317 (1967). In determining whether evidence is "tainted," the

---

[3] ORS 164.135 provides, in part:

"(1) A person commits the crime of unauthorized use of a vehicle when:

"(a) The person takes, operates, exercises control over, rides in or otherwise uses another's vehicle, boat or aircraft without consent of the owner * * *."

[4] We do not reach the issue of whether defendant's statements about the Elling burglary should have been suppressed under the Fifth Amendment.

critical question is " 'whether, granting establishment of the primary illegality, the evidence * * * has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' Maguire, Evidence of Guilt, 221 (1959)." *Wong Sun v. United States,* 371 US 471, 488, 83 S Ct 407, 9 L Ed 2d 441 (1963).

Defendant's inculpatory statements concerning the other two burglaries resulted directly from the police exploitation of the "primary illegality." Kohlmeyer discovered defendant's involvement in the other burglaries while illegally questioning him about the Elling burglary. The state does not claim that the police suspected or had any reason to suspect that he was involved in the specific burglaries until he admitted committing the Elling burglary during interrogation. Although his statements were voluntary, the failure of the state to demonstrate that they were obtained by means separate from the interrogation which Kohlmeyer improperly initiated renders them inadmissible. *See State v. Painter,* 296 Or 422, 425, 676 P2d 309 (1984); *State v. Jones, supra; State v. Lloyd,* 22 Or App 254, 278, 538 P2d 1278 (1975). The court erred in not suppressing them.

Reversed and remanded for a new trial.