# SHEA *v.* LOUISIANA

No. 82–5920.   Argued November 7, 1984—Decided February 20, 1985

BLACKMUN, J., delivered the opinion of the Court, in which BRENNAN, MARSHALL, POWELL, and STEVENS, JJ., joined.   WHITE, J., filed a dissenting opinion, in which BURGER, C. J., and REHNQUIST and O'CONNOR, JJ., joined, *post*, p. 61.   REHNQUIST, J., filed a dissenting opinion, *post*, p. 66.

*Frances Baker Jack*, by appointment of the Court, 467 U. S. 1238, argued the cause and filed a brief for petitioner.

*Paul J. Carmouche* argued the cause for respondent. With him on the briefs was *John A. Broadwell*.

JUSTICE BLACKMUN delivered the opinion of the Court.

In *Edwards* v. *Arizona*, 451 U. S. 477 (1981), this Court ruled that a criminal defendant's rights under the Fifth and Fourteenth Amendments were violated by the use of his confession obtained by police-instigated interrogation—without counsel present—after he requested an attorney. This case presents the issue whether that ruling is applicable to a case pending on direct appeal in a state court at the time *Edwards* was decided.

I

There is no dispute as to the facts. Petitioner Kevin Michael Shea was charged in Louisiana with two counts of armed robbery. He was arrested on July 2, 1979, and was taken to the police station at Shreveport. There he was turned over to Detectives Smith and Snell for questioning. His so-called *Miranda* rights, see *Miranda* v. *Arizona*, 384 U. S. 436 (1966), were read to him, and he signed a standard *Miranda* card. He said, however, that he did not wish to make any statement until he saw a lawyer. The interview thereupon was terminated.

The following afternoon, July 3, before petitioner had been in communication with any lawyer, Detective Snell returned. He informed petitioner that he was to be transferred from the city jail to the parish jail. Without inquiring of petitioner whether he had spoken with an attorney or whether he was indigent, and without any indication from petitioner that he now was willing to be interrogated, Snell asked if he wanted to talk about the case. Again, *Miranda* rights were read to petitioner and again he signed a *Miranda* card. He then orally confessed that he had committed the two robberies.

The charges against petitioner came on for trial in due course in the State District Court for Caddo Parish. At this point, the two counts were severed. Prior to his trial before a jury on the first count, petitioner formally moved to suppress the confession of July 3. App. 2. At the trial, which

took place in 1980, the prosecution offered the confession in evidence. The defense objected, but the objection was overruled and the confession was admitted. Petitioner was convicted. He filed a like suppression motion with respect to the second charge. *Id.*, at 6. When this was denied, he withdrew his original plea and entered a plea of guilty, with a reservation under state law, see *State* v. *Crosby*, 338 So. 2d 584, 588 (La. 1976), of his right to appeal the denial of the motion to suppress. App. 7–8.

On his appeal to the Supreme Court of Louisiana, petitioner raised the issue of the trial court's error, in violation of *Miranda*, in admitting the confession. In its opinion, the Louisiana tribunal cited this Court's decision in *Edwards*, which had come down in the meantime but subsequent to petitioner's trial and convictions. The Louisiana court acknowledged the presence of an *Edwards* violation.[1] It stated:

> "In the present case it is undisputed that the police did initiate such an inquiry on July 3, after having been clearly informed by the defendant on the previous evening that he would not make any statements without counsel. Consequently, there was a violation of the additional standard governing police interrogation of a suspect imposed by *Edwards* v. *Arizona* . . . ." 421 So. 2d 200, 203 (1982).

The court, however, went on to hold that *Edwards* was not to be applied in petitioner's case:

> "As this [error] occurred before the decision in *Edwards* was rendered and we are convinced the United States

---

[1] We thus are not confronted in this case with any issue as to whether petitioner had invoked his right to counsel in the first instance, see *Smith* v. *Illinois*, 469 U. S. 91 (1984), or as to whether, having done so, it was he who had initiated further conversation and interrogation, see *Oregon* v. *Bradshaw*, 462 U. S. 1039 (1983), and the several opinions therein. A violation of the *Edwards* principle, all parties here agree, took place in the instant case.

Supreme Court will pronounce that decision is not retroactive, we so hold in this case." 421 So. 2d, at 204.

Petitioner successfully obtained a rehearing on the retroactivity issue. On rehearing, although the Louisiana Supreme Court again acknowledged, *id.*, at 210, that petitioner's confession, under *Edwards*, was not admissible, that court adhered, over two dissents, to its position that *Edwards* was not to be given retroactive effect. It stated that that decision was a "clear break with the past," was a new ruling, and was not retroactive. 421 So. 2d, at 210.

Because of the importance of the issue and because of conflicting decisions elsewhere,[2] we granted certiorari. 466 U. S. 957 (1984).

## II

*Edwards*, the case at the center of the present controversy, involved facts startlingly similar to those of the present case. Police officers informed Edwards of his *Miranda* rights and questioned him until he said he wanted an attorney. At that point questioning ceased. The next day, however, other officers visited Edwards, stated they wanted to talk to him, informed him of his *Miranda* rights, and obtained an oral confession. This Court was positive and clear in its ruling:

"[A]lthough we have held that after initially being advised of his *Miranda* rights, the accused may himself

---

[2] See, *e. g.*, *State* v. *Brown*, 317 N. W. 2d 714, 715 (Minn. 1982); *State* v. *Taylor*, 56 Ore. App. 703, 708, 643 P. 2d 379, 382 (1982). Other courts, without addressing the retroactivity issue, have applied *Edwards* to cases pending on direct appeal when the decision was announced. See, *e. g.*, *State* v. *Platt*, 130 Ariz. 570, 575–576, 637 P. 2d 1073, 1079 (App. 1981); *People* v. *Cerezo*, 635 P. 2d 197, 199–201 (Colo. 1981); *State* v. *Brezee*, 66 Haw. 162, 657 P. 2d 1044 (1983); *State* v. *Carty*, 231 Kan. 282, 644 P. 2d 407 (1982); *People* v. *Paintman*, 412 Mich. 518, 315 N. W. 2d 418, cert. denied, 456 U. S. 995 (1982).

validly waive his rights and respond to interrogation, . . . the Court has strongly indicated that additional safeguards are necessary when the accused asks for counsel; and we now hold that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police" (footnote omitted). 451 U. S., at 484–485.

See also *Rhode Island* v. *Innis*, 446 U. S. 291, 298 (1980); *Fare* v. *Michael C.*, 442 U. S. 707, 719 (1979); *Michigan* v. *Mosley*, 423 U. S. 96, 104, n. 10 (1975), and *id.*, at 109–111 (opinion concurring in result); *Miranda* v. *Arizona*, 384 U. S., at 444–445, 474.

The legal principle, thus, is established and is uncontested here. The only question before us in this case is whether that ruling applies retroactively with respect to petitioner's convictions when the issue was raised and his case was pending and undecided on direct appeal in the state system at the time *Edwards* was decided.[3]

---

[3] Had petitioner's case been pending here on certiorari when *Edwards* was announced, it surely would have been remanded, as were other such cases, for reconsideration in the light of *Edwards*. See *Blakney* v. *Montana*, 451 U. S. 1013 (1981); *White* v. *Finkbeiner*, 451 U. S. 1013 (1981) (on federal habeas); *Leuschner* v. *Maryland*, 451 U. S. 1014 (1981); *Monroe* v. *Idaho*, 451 U. S. 1014 (1981); *Wantland* v. *Maryland*, 451 U. S. 1014 (1981); *James* v. *Illinois*, 451 U. S. 1014 (1981). This Court's actions in 1981 in these cases indicated no conclusion on its part that *Edwards* was

## III

Two of this Court's recent cases bear importantly upon the issue. The first is *United States* v. *Johnson*, 457 U. S. 537 (1982). In that case, we held that a decision of this Court concerning Fourth Amendment rights was to be applied retroactively to all convictions that were not yet final at the time the decision was rendered, except in those situations that would be clearly controlled by existing retroactivity precedents to the contrary. Specifically, the Court held that *Payton* v. *New York*, 445 U. S. 573 (1980), was to be applied retroactively to Johnson's case.

The Court in *Johnson* found persuasive Justice Harlan's earlier reasoning that application of a new rule of law to cases pending on direct review is necessary in order for the Court to avoid being in the position of a super-legislature, selecting one of several cases before it to use to announce the new rule and then letting all other similarly situated persons be passed by unaffected and unprotected by the new rule. See *Desist* v. *United States*, 394 U. S. 244, 256 (1969) (dissenting opin-

---

inapplicable to other cases pending on direct review. In all six of these cases, the questioning, of course, predated *Edwards*. In *Monroe* and *Blakney*, on remand, *Edwards* was applied without discussion of retroactivity. See *State* v. *Monroe*, 103 Idaho 129, 645 P. 2d 363 (1982); *State* v. *Blakney*, 197 Mont. 131, 641 P. 2d 1045 (1982).

While not conclusive, it is of interest to note that this Court, on at least two occasions in addition to *Solem* v. *Stumes*, 465 U. S. 638 (1984), discussed *infra* in the text, already has considered *Edwards* in a retroactive setting, that is, in its application to custodial inquiries that took place before *Edwards* was decided here. See *Wyrick* v. *Fields*, 459 U. S. 42 (1982) (inquiry in 1974); *Oregon* v. *Bradshaw*, 462 U. S. 1039 (1983) (inquiry in 1980). *Bradshaw*, like the instant case, was on direct review. This Court considered and decided the *Edwards* issue in each of those cases with no comment or expressed concern about retroactivity. Our examination of the appendices and briefs in those two cases reveals that the retroactivity issue was not raised. Its underlying presence, however, was not sufficiently disturbing to cause the Court to mention it *sua sponte*.

ion); *Mackey* v. *United States*, 401 U. S. 667, 675 (1971) (separate opinion). The Court noted that, at a minimum, "'all "new" rules of constitutional law must . . . be applied to all those cases which are still subject to direct review by this Court at the time the "new" decision is handed down.'" *United States* v. *Johnson*, 457 U. S., at 548, quoting from the dissent in *Desist* v. *United States*, 394 U. S., at 258. In *Johnson* the Court, "[t]o the extent necessary to decide today's case, . . . embrace[d] Justice Harlan's views in *Desist* and *Mackey*." 457 U. S., at 562. It thus determined that unless the rule is so clearly a break with the past that prior precedents mandate nonretroactivity, a new Fourth Amendment rule is to be applied to cases pending on direct review when the rule was adopted.

In considering the retroactivity of *Payton*, the Court then concluded that the question was to be resolved fairly by applying the *Payton* ruling to all cases pending on direct review when *Payton* was decided. So to do (a) would provide a principle of decisionmaking consonant with the Court's original understanding in *Linkletter* v. *Walker*, 381 U. S. 618 (1965), and *Tehan* v. *United States ex rel. Shott*, 382 U. S. 406 (1966), (b) would comport with this Court's judicial responsibility to do justice to each litigant on the merits of his own case, and (c) would further the goal of treating similarly situated defendants similarly.

The second case is *Solem* v. *Stumes*, 465 U. S. 638 (1984). It, too, clearly involved an obvious *Edwards* violation that took place in 1973, more than seven years before *Edwards*. After Stumes' state-court conviction had been finally affirmed by the Supreme Court of South Dakota, he sought federal habeas relief. His petition for a writ, however, was denied by the Federal District Court. While Stumes' appeal was pending in the Court of Appeals, *Edwards* was decided here. The Court of Appeals then ruled that, under *Edwards*, the police had acted unconstitutionally. This

Court, by a divided vote, reversed, holding that *Edwards* was not to be applied retroactively in the *Stumes* situation. JUSTICE POWELL concurred in the judgment, 465 U. S., at 651, for he would not impose upon the State the costs that accrue by retroactive application of a new rule of constitutional law on habeas corpus; those costs, in his view, "generally far outweigh the benefits of this application." *Id.*, at 654.

The primary difference between *Johnson*, on the one hand, and *Stumes*, on the other, is the difference between a pending and undecided direct review of a judgment of conviction and a federal collateral attack upon a state conviction which has become final.[4] We must acknowledge, of course, that *Johnson* does not directly control the disposition of the present case. In *Johnson*, the Court specifically declined to address the implications of its holding for a case in a constitutional area other than the Fourth Amendment, or for a case in which a Fourth Amendment issue is raised on collateral

---

[4] In *Solem* v. *Stumes*, the Court observed:

"At a minimum, nonretroactivity means that a decision is not to be applied in collateral review of final convictions. For purposes of this case, that is all we need decide about *Edwards*." 465 U. S., at 650.

Of course, under the rationale of our decision today, the question is whether the conviction became final before *Edwards* was decided. As we hold, if a case was pending on direct review at the time *Edwards* was decided, the appellate court must give retroactive effect to *Edwards*, subject, of course, to established principles of waiver, harmless error, and the like. If it does not, then a court conducting collateral review of such a conviction should rectify the error and apply *Edwards* retroactively. This is consistent with Justice Harlan's view that cases on collateral review ordinarily should be considered in light of the law as it stood when the conviction became final. See *Mackey* v. *United States*, 401 U.S. 667, 689 (1971) (Harlan, J., concurring in judgment). See also *Hankerson* v. *North Carolina*, 432 U.S. 233, 248 (1977) (POWELL, J., concurring in judgment). Thus, the result of our decisions concerning the retroactive applicability of the ruling in *Edwards* v. *Arizona* is fully congruent with both aspects of the approach to retroactivity propounded by Justice Harlan in his concurrence in *Mackey*.

attack.[5]   457 U. S., at 562.   We now conclude, however, that there is no reason to reach in this case a result that is different from the one reached in *Johnson*.   See *Mack* v. *Oklahoma*, 459 U. S. 900 (1982).   There is nothing about a Fourth Amendment rule that suggests that in this context it should be given greater retroactive effect than a Fifth Amendment rule.   Indeed, a Fifth Amendment violation may be more likely to affect the truth-finding process than a Fourth Amendment violation.   And Justice Harlan's reasoning—that principled decisionmaking and fairness to similarly situated petitioners require application of a new rule to all cases pending on direct review—is applicable with equal force to the situation presently before us.   We hold that our analysis in *Johnson* is relevant for petitioner's direct-review Fifth Amendment claim under *Edwards*.   He is entitled to the benefit of the ruling in that case.

## IV

Other arguments that have been made in support of the judgment below are not persuasive.   First, it is said that drawing a distinction between a case pending on direct review and a case on collateral attack produces inequities and injustices that are not any different from those that *Johnson* purported to cure.   The argument is that the litigant whose *Edwards* claim will not be considered because it is presented on collateral review will be just as unfairly treated as the direct-review litigant whose claim would be bypassed were *Edwards* not the law.   The distinction, however, properly

---

[5] The Court in *Johnson* also declined to address situations clearly controlled by existing retroactivity precedents, such as where the new rule of law is so clear a break with the past that it has been considered nonretroactive almost automatically.   Whatever the merits of a different retroactivity rule for cases of that kind may be, we have no need to be concerned with the question here.   In *Solem* v. *Stumes* the Court recognized that *Edwards* was "not the sort of 'clear break' that is automatically nonretroactive."   465 U. S., at 647.

rests on considerations of finality in the judicial process. The one litigant already has taken his case through the primary system. The other has not. For the latter, the curtain of finality has not been drawn. Somewhere, the closing must come. JUSTICE POWELL stressed this in his opinion concurring in the judgment in *Solem* v. *Stumes*, 465 U. S., at 653–654. He said specifically: "[I]t is particularly difficult in such cases to justify imposing upon the State the costs of collateral review. These are not insubstantial." *Id.*, at 654.

Next, it is said that the application of *Edwards* to cases pending on direct review will result in the nullification of many convictions and will relegate prosecutors to the difficult position of having to retry cases concerning events that took place years ago. We think this concern is overstated. We are given no empirical evidence in its support, and Louisiana states that any such evidence is unavailable. Brief for Respondent 11. We note, furthermore, that several courts have applied *Edwards* to cases pending on direct review without expressing concern about lapse of time or retroactivity and without creating any apparent administrative difficulty. See n. 2, *supra*. And if a case is unduly slow in winding its way through a State's judicial system, that could be as much the State's fault as the defendant's, and should not serve to penalize the defendant.

In addition, it is said that in every case, *Edwards* alone excepted, reliance on existing law justifies the nonapplication of *Edwards*. But, as we have pointed out, there is no difference between the petitioner in *Edwards* and the petitioner in the present case. If the *Edwards* principle is not to be applied retroactively, the only way to dispense equal justice to Edwards and to Shea would be a rule that confined the *Edwards* principle to prospective application unavailable even to Edwards himself.

Finally, it is said that the *Edwards* rule is only prophylactic in character and is not one designed to enhance accuracy in criminal jurisprudence. This argument, of course, is

taken from *Michigan* v. *Payne*, 412 U. S. 47 (1973), where the retroactivity of *North Carolina* v. *Pearce*, 395 U. S. 711 (1969), was under consideration. The argument, we feel, is fully answered by the decision in *United States* v. *Johnson*, and by what we have said above in this opinion.

The judgment of the Supreme Court of Louisiana is reversed, and the case is remanded to that court for further proceedings not inconsistent with this opinion.

*It is so ordered.*

JUSTICE WHITE, with whom THE CHIEF JUSTICE, JUSTICE REHNQUIST, and JUSTICE O'CONNOR join, dissenting.

Last Term, in *Solem* v. *Stumes*, 465 U. S. 638 (1984), we held that the rule announced by the Court in *Edwards* v. *Arizona*, 451 U. S. 477 (1981), should not be applied retroactively in collateral attacks on criminal convictions. We concluded that the prophylactic purpose of the *Edwards* rule, the justifiable failure of police and prosecutors to foresee the Court's decision in *Edwards*, and the substantial disruption of the criminal justice system that retroactive application of *Edwards* would entail all indicated the wisdom of holding *Edwards* nonretroactive. Today, however, the majority concludes that notwithstanding the substantial reasons for restricting the application of *Edwards* to cases involving interrogations that postdate the Court's opinion in *Edwards*, the *Edwards* rule must be applied retroactively to all cases in which the process of direct appeal had not yet been completed when *Edwards* was decided. In so holding, the majority apparently adopts a rule long advocated by a shifting minority of Justices and endorsed in limited circumstances by the majority in *United States* v. *Johnson*, 457 U. S. 537 (1982): namely, the rule that any new constitutional decision—except, perhaps, one that constitutes a "clear break with the past"—must be applied to all cases pending on direct appeal at the time it is handed down.

Two concerns purportedly underlie the majority's decision. The first is that retroactivity is somehow an essential attribute of judicial decisionmaking, and that when the Court announces a new rule and declines to give it retroactive effect, it has abandoned the judicial role and assumed the function of a legislature—or, to use the term Justice Harlan employed in describing the problem, a "super-legislature." *Desist* v. *United States*, 394 U. S. 244, 259 (1969) (Harlan, J., dissenting). The second (and not completely unrelated) concern is fairness. It is the business of a court, the majority reasons, to treat like cases alike; accordingly, it is unfair for one litigant to receive the benefit of a new decision when another, identically situated, is denied the same benefit. The majority's concerns are no doubt laudable, but I cannot escape the conclusion that the rule they have spawned makes no sense.

As a means of avoiding what has come to be known as the super-legislature problem, the rule announced by the majority is wholly inadequate. True, the Court is not and cannot be a legislature, super or otherwise. But I should think that concerns about the supposed usurpation of legislative authority by this Court generally go more to the substance of the Court's decisions than to whether or not they are retroactive. Surely those who believe that the Court has overstepped the bounds of its legitimate authority in announcing a new rule of constitutional law will find little solace in a decision holding the new rule retroactive. If a decision is in some sense illegitimate, making it retroactive is a useless gesture that will fool no one. If, on the other hand, the decision is a salutary one, but one whose purposes are ill-served by retroactive application, retroactivity may be worse than useless, imposing costs on the criminal justice system that will likely be uncompensated for by any perceptible gains in "judicial legitimacy."

The futility of this latest attempt to use retroactivity doctrine to avoid the super-legislature difficulty is highlighted by

the majority's unwillingness to commit itself to the logic of its position. For even as it maintains that retroactivity is essential to the judicial function, today's majority, like the majority in *Johnson, supra,* continues to hold out the possibility that a "really" new rule—one that marks a clear break with the past—may not have to be applied retroactively even to cases pending on direct review at the time the new decision is handed down. See *ante,* at 57 and 59, n. 5; *Johnson, supra,* at 549–550, 551–554. Of course, if the majority were truly concerned with the super-legislature problem, it would be "clear break" decisions that would trouble it the most. Indeed, one might expect that a Court as disturbed about the problem as the majority purports to be would swear off such decisions altogether, not reserve the power both to issue them and to decline to apply them retroactively. In leaving open the possibility of an exception for "clear break" decisions, the majority demonstrates the emptiness of its proposed solution to the super-legislature problem.

The claim that the majority's rule serves the interest of fairness is equally hollow. Although the majority finds it intolerable to apply a new rule to one case on direct appeal but not to another, it is perfectly willing to tolerate disparate treatment of defendants seeking direct review of their convictions and prisoners attacking their convictions in collateral proceedings. As I have stated before, see *Johnson, supra,* at 566–568 (WHITE, J., dissenting); *Williams* v. *United States,* 401 U. S. 646, 656–659 (1971) (plurality opinion), it seems to me that the attempt to distinguish between direct and collateral challenges for purposes of retroactivity is misguided. Under the majority's rule, otherwise identically situated defendants may be subject to different constitutional rules, depending on just how long ago now-unconstitutional conduct occurred and how quickly cases proceed through the criminal justice system. The disparity is no different in kind from that which occurs when the benefit of a new constitutional rule is retroactively afforded to the defendant in whose

case it is announced but to no others; the Court's new approach equalizes nothing except the numbers of defendants within the disparately treated classes.

The majority recognizes that the distinction between direct review and habeas is problematic, but justifies its differential treatment by appealing to the need to draw "the curtain of finality," *ante*, at 60, on those who were unfortunate enough to have exhausted their last direct appeal at the time *Edwards* was decided. Yet the majority offers no reasons for its conclusion that finality should be the decisive factor. When a conviction is overturned on direct appeal on the basis of an *Edwards* violation, the remedy offered the defendant is a new trial at which any inculpatory statements obtained in violation of *Edwards* will be excluded. It is not clear to me why the majority finds such a burdensome remedy more acceptable when it is imposed on the State on direct review than when it is the result of a collateral attack. The disruption attendant upon the remedy does not vary depending on whether it is imposed on direct review or habeas;[1] accord-

---

[1] The distinction between direct review and collateral attack may bear some relationship to the recency of the crime; thus, to the extent that the difficulties presented by a new trial may be more severe when the underlying offense is more remote in time, it may be that new trials would tend to be somewhat more burdensome in habeas cases than in cases involving reversals on direct appeal. However, this relationship is by no means direct, for the speed with which cases progress through the criminal justice system may vary widely. Thus, if the Court is truly concerned with treating like cases alike, it could accomplish its purpose far more precisely by applying new constitutional rules only to conduct of appropriately recent vintage. I assume, however, that no one would argue for an explicit "5-year rule," for example.

The notion that a new trial is a significantly less burdensome remedy when it is imposed on direct review than when it is ordered on habeas is also called into serious question by the facts of this particular case. The remedy the Court grants the petitioner is a new trial that will be held almost six years after the commission of the offense with which he is charged. I have no doubt that there are many prisoners whose convic-

ingly, if the remedy must be granted to defendants on direct appeal, there is no strong reason to deny it to prisoners attacking their convictions collaterally. Conversely, if it serves no worthwhile purpose to grant the remedy to a defendant whose conviction was final before *Edwards*, it is hard to see why the remedy should be available on direct review.

The underlying flaw of the majority's opinion is its failure to articulate the premises on which the retroactivity doctrine it announces actually rests. In recognizing that a decision marking a clear break from the past may not be retroactive and in holding that the concern of finality trumps considerations of fairness that might otherwise dictate retroactivity in collateral proceedings, the majority implicitly recognizes that there is in fact more at issue in decisions involving retroactivity than treating like cases alike. In short, the majority recognizes that there are *reasons* why certain decisions ought not be retroactive. But the rules the majority announces fail to reflect any thoughtful inquiry into what those reasons might be. By contrast, the principles of retroactivity set forth in *Linkletter* v. *Walker*, 381 U. S. 618 (1965), and most recently applied in *Solem* v. *Stumes*, 465 U. S. 638 (1984), provide a rational framework for thinking about the question whether retroactive application of any particular decision makes sense—that is, whether the benefits of retroactivity outweigh its costs. Because the Court has already deter-

tions were final at the time *Edwards* was decided who could be given a new trial as conveniently as petitioner.

Of course, it will be less burdensome in the aggregate to apply *Edwards* only to cases pending when *Edwards* was decided than to give it full retroactive effect; by the same token, it would be less burdensome to apply *Edwards* retroactively to all cases involving defendants whose last names begin with the letter "S" than to make the decision fully retroactive. The majority obviously would not countenance the latter course, but its failure to identify any truly relevant distinction between cases on direct appeal and cases raising collateral challenges makes the rule it announces equally indefensible.

mined that the relevant considerations set forth in *Linkletter* (the purpose of the new rule, the extent of law enforcement officials' justifiable reliance on the prior rule, and the effects on the criminal justice system of retroactivity) dictate non-retroactive application of the rule in *Edwards*, I cannot join in the majority's conclusion that that rule should be applied retroactively to cases pending on direct review at the time of our decision in *Edwards*. More importantly, I cannot concur in the approach to retroactivity adopted by today's majority—an approach that, if our precedents regarding the non-retroactivity of decisions marking a clear break with the past remain undisturbed, merely adds a confusing and unjustifiable addendum to our retroactivity jurisprudence.[2]

I respectfully dissent.

JUSTICE REHNQUIST, dissenting.

I would be willing to join the result reached by the Court in this case if the majority were willing to adopt both aspects of the approach to retroactivity propounded by Justice Harlan in his concurrence in *Mackey* v. *United States*, 401 U. S. 667, 675 (1971). Under his approach, new constitutional rules prescribed by this Court for the conduct of criminal prosecutions would apply retroactively to all cases on direct appeal at the time the new rule was announced and, with narrow exceptions, would not apply in collateral proceedings challenging convictions that had become final before the new rule was announced. I will not attempt to summarize the justifica-

---

[2] After today, a decision that is foreshadowed—not new at all—is applicable both on direct review and in collateral proceedings. A decision that makes law that is somewhat new is to apply to all cases on direct review but will generally not be a basis for collateral relief. Really new decisions breaking with the past, however, will likely apply neither in collateral proceedings nor to cases on direct review other than that in which the decision is announced. The majority thus recognizes for purposes of retroactivity doctrine three categories of decisions: not new, newish, and brand new. I had hoped that after plenary review, we could do better than that.

tions for this approach so thoughtfully articulated by Justice Harlan.

Because the Court apparently is not willing to adopt in entirety Justice Harlan's bright-line distinction between direct appeals and collateral attacks, I join JUSTICE WHITE's dissent, agreeing with him that there is little logic to the Court's analysis and its rejection of the sound reasons given in *Solem* v. *Stumes,* 465 U. S. 638 (1984), for making *Edwards* v. *Arizona,* 451 U. S. 477 (1981), nonretroactive.*

---

*While the results reached by the Court in this case and in *Solem* happen to be the same as they would have been under Justice Harlan's approach, the Court's analysis in *Solem* is not the same as his approach. Only JUSTICE POWELL, concurring in the judgment in *Solem,* followed the *Mackey* concurrence. The rationale of Justice Harlan's approach requires that the Court apply it in all cases, not just in those cases in which a majority favors the result it yields; and for now it does not appear that the Court is prepared to take this course.