200 N.J. Super. 385 (1985)
491 A.2d 764
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JAMES H. ADAMS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted March 25, 1985.
Decided April 10, 1985.
*386 Before Judges McELROY, DREIER and SHEBELL.
Emanuel Gersten, attorney for appellant.
Richard E. Honig, Sussex County Prosecutor, attorney for respondent (Kevin D. Kelly, Assistant Prosecutor, on the letter brief).
*387 Irwin I. Kimmelman, Attorney General, Amicus Curiae (Boris Moczula, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by SHEBELL, J.A.D.
Defendant appeals his convictions in the municipal court and the Law Division on a motor vehicle charge of driving while under the influence of intoxicating liquor (N.J.S.A. 39:4-50(a)). He argues that the State failed to prove his guilt beyond a reasonable doubt. He also asserts he should have been given Miranda warnings at the time of his initial stop and/or at the time he was taken into custody and further, that the "rights" normally read to a driver prior to breathalyzer testing are constitutionally insufficient.
Defendant was charged at the time the offense occurred on January 14, 1983 and was tried and convicted in the municipal court on January 19, 1984. His conviction after a de novo trial on the record in the Law Division took place on May 31, 1984. He filed his appeal with this court on June 20, 1984.
Defense counsel before the municipal court trial commenced entered a plea of not guilty stating "[o]ne of my defenses, and the basic defense, is that in this type of case, it is necessary for the law enforcement officer to read the Miranda warnings to the defendant."
On July 2, 1984 the United States Supreme Court handed down its decision in Berkemer v. McCarty, ___ U.S. ___, ___, 104 S.Ct. 3138, 3148, 82 L.Ed.2d 317, 331 (1984), holding that a person subjected to custodial interrogation is entitled to the benefit of the procedural safeguards established in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) regardless of the nature or severity of the offense which occasioned the arrest. The Court went on to hold that temporary detention pursuant to ordinary traffic stops does not constitute "custody" for Miranda purposes and that it is only *388 when a suspect's freedom of action is curtailed to the degree normally associated with a formal arrest that Miranda applies. ___ U.S. at ___, 104 S.Ct. at 3151, 82 L.Ed.2d at 334-35.
Although a determination of the issue of the retroactivity of Berkemer might not be necessary for the disposition of this appeal, we choose to rule on the issue inasmuch as defendant raised it in the municipal court and the only reported decision in this jurisdiction is a Law Division opinion which disposes of the issue based primarily upon precedents which deal with the retroactivity of Fourth Amendment rather than Fifth Amendment principles. See State v. Vega, 200 N.J. Super. 448 (Law Div. 1984). In Shea v. Louisiana, ___ U.S. ___, ___, 105 S.Ct. 1065, 1070, 84 L.Ed.2d 38, 46-47 (1985) the United States Supreme Court concluded that:
There is nothing about a Fourth Amendment rule that suggests that in this context it should be given greater retroactive effect than a Fifth Amendment rule. Indeed, a Fifth Amendment violation may be more likely to affect the truth-finding process than a Fourth Amendment violation.
The United States Supreme Court reaffirmed a three pronged test in Solem v. Stumes, ___ U.S. ___, 104 S.Ct. 1338, 79 L.Ed.2d 579 (1984) when it considered the retroactivity of Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), another Miranda case. The Court there adopted the following three criteria to guide resolution of the retroactivity question: (a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards and (c) the effect on the administration of justice of a retroactive application of the new standards. ___ U.S. at ___, 104 S.Ct. at 1341, 79 L.Ed.2d at 587.
In applying the first prong of the test, Stumes held that retroactive effect is most appropriate where the new constitutional principle is designed to enhance the accuracy of criminal trials. Id. at ___, 104 S.Ct. at 1341, 79 L.Ed.2d at 587. Stumes points out that although the Miranda warnings are not entirely unrelated to the accuracy of the final result as are Fourth Amendment rights, neither are the warnings a sine qua *389 non of a fair and accurate interrogation. Ibid. If there is doubt as to the voluntariness or reliability of any particular statement, suppression can be ordered without regard to the failure of the police to adhere to Miranda requirements. Id. at ___, 104 S.Ct. at 1342, 79 L.Ed.2d at 588. Obviously the same reasoning holds true in a Berkemer situation and as the Stumes Court pointed out, the Miranda decision itself was not retroactively applied. Ibid.; Johnson v. New Jersey, 384 U.S. 719, 729-31, 86 S.Ct. 1772, 1778-79, 16 L.Ed.2d 882, 889-91 (1966).
Regarding the second prong, Stumes held that retroactivity will be denied where there is justifiable reliance on a prior rule which was different from that announced by the new decision; there must be a clear break with past law. ___ U.S. at ___, 104 S.Ct. at 1343, 79 L.Ed.2d at 588-89. The Court stated:
When the Court has explicitly overruled past precedent, disapproved a practice it has sanctioned in prior cases, or overturned a longstanding practice approved by near-unanimous lower-court authority, the reliance and effect factors in themselves "have virtually compelled a finding of nonretroactivity." United States v. Johnson, 457 US 537, 549-550, 73 L Ed 2d 202, 102 S Ct 2579 [2587] (1982) See also id., at 551-552, 73 L Ed 2d 202, 102 S Ct 2579. [___ U.S. at ___, 79 L.Ed.2d at 589, 104 S.Ct. at 1343]
We find that insofar as the law of this State is concerned Berkemer is a clear break with the prior law. We formerly held Miranda warnings were unnecessary when dealing with a person arrested for a violation of the motor vehicle laws such as drunken driving. State v. Macuk, 57 N.J. 1, 15-16 (1970); State v. Lewin, 163 N.J. Super. 439, 441 (App.Div. 1978), certif. den. 81 N.J. 58 (1979), cert. den. 444 U.S. 905, 100 S.Ct. 218, 62 L.Ed.2d 142 (1979). We think it is significant for these purposes that prior to Berkemer the United States Supreme Court denied certiorari of a decision of this court which held that the State could use statements against a defendant, even in its prosecution for a criminal offense, where those statements were obtained from the defendant pursuant to a motor vehicle arrest and without the benefit of Miranda warnings. Lewin, *390 163 N.J. Super. at 441. Thus it appears that in the past the United States Supreme Court by inaction has sanctioned in prior cases the New Jersey holdings of Macuk and Lewin. But see Maryland v. Baltimore Radio Show, Inc., 338 U.S. 912, 70 S.Ct. 252, 94 L.Ed. 562 (1950). We therefore conclude that Berkemer is a clear break from the prior rule upon which there was "justifiable reliance" by law enforcement authorities in this state.
We consider next the third prong of the balancing test, i.e., the effect retroactivity would have on the administration of justice. In this regard we look to the "significant number" of cases in which the new decision might make a difference and the strong public policy in this state favoring the elimination of drunken and careless drivers from our highways. See State v. Dyal, 97 N.J. 229, 237 (1984); Kelly v. Gwinnell, 96 N.J. 538, 545 (1984). It is obvious that there are probably a significant number of cases which would have to be retried and/or overturned based on a police officer's then good faith questioning of a suspect in custody on suspicion of drunken driving or other traffic violation. Having applied the three criteria of Stumes, we conclude that it points in the direction that the new rule announced in Berkemer is not to be retroactively applied.
We must next consider the applicability of the holding in Shea v. Louisiana on our decision. Shea concluded that the holding in Edwards was applicable to a pending and undecided direct review of a judgment of conviction although its retroactive application was denied in a collateral post-conviction attack in Stumes. In Shea defendant's confession to robberies was obtained after his request for counsel. We are satisfied that as it pertains to the truth-finding process in traffic violations "principled decisionmaking" does not require application of the Berkemer rule. The risk of coerced or involuntary confessions being extracted in motor vehicle investigations involving drunken driving or lesser traffic violations is minimal. Further, *391 unlike Shea, we are able to state emphatically based on empirical evidence that the prosecution of thousands of motor vehicle violations would be impeded.[1] Thus, we conclude that Berkemer is not to be applied retroactively in non-indictable motor vehicle violations.
The line of non-retroactivity, however, can be drawn in a variety of places such as, applying it only to convictions not yet final, only to trials not yet begun, only to constitutional rights violated after the date of the new decision, or only to those cases where the challenged evidence is sought to be introduced after the date of the decision. In light of the strong public policy against drunken drivers and the desire for highway safety, we hold that the line is to be drawn so that only those defendants whose constitutional rights were violated after the date of Berkemer can have the benefit of the new rule. Thus the holding of Berkemer has no application to this defendant's case.
Defendant urges that the State failed to sustain its burden of proving every element of the offense beyond a reasonable doubt and that the court erred in accepting the State's proofs with respect to the validity of the breathalyzer evidence. We have carefully considered defendant's arguments as set forth at length in his brief. In light of the applicable law we are fully satisfied that there is no merit to defendant's remaining contentions. R. 2:11-3(e)(2); State v. Johnson, 42 N.J. 146, 162 (1964); Romano v. Kimmelman, 96 N.J. 66 (1984).
We affirm.
NOTES
[1] According to the Administrative Office of the Courts an average of approximately 3,000 drunken driving cases were added to the municipal court dockets each month during 1984. When Berkemer was decided there were approximately 8,900 drunken driving cases and approximately 300,000 moving motor vehicle violations pending in the municipal courts of this State.