TYSON, Judge.
Stoney Byrd Jordan was indicted for breaking and entering a vehicle, to-wit, a 1978 Pontiac, with the intent to commit a felony or theft therein, to-wit, theft of property contrary to § 13A-8-11 Code of Alabama 1975, as amended. The jury found the appellant “guilty of breaking and entering a vehicle as charged in the indictment.” At the sentencing hearing the appellant was sentenced as a habitual felony offender to seven years’ imprisonment in the state penitentiary.
On February 11, 1986 William Taylor was living on the second floor in Tamarack Apartments, Auburn, Alabama when, around midnight, he heard a loud car outside his apartment. As he looked out of his window, he saw a red Opal backing into a parking space. Taylor became suspicious because he had never seen this vehicle before, so he wrote down the tag number of the car. Taylor then looked back out his window and saw a black man opening the door of Taylor’s roommate’s car. When the car light came on, Taylor beat on his window to scare the black man away. Taylor then woke up his roommate, Wesley Vickers, and both men ran downstairs. Taylor and Vickers observed the red Opal with two black males inside and one black male outside the car.
The red Opal pulled down about 30 or 40 yards in the parking lot and stopped while the other black male ran and got inside the red Opal. The appellant was identified as the party outside the red Opal as it pulled away.
Vickers checked his vehicle and discovered a speaker was missing. Vickers then ran upstairs and called the police. While the police were at the scene taking Vickers’ and Taylor’s statements, the police received a call stating that the red Opal had been located at a Krystal Restaurant. The police then took Taylor and Vickers to this Krystal. There they identified the automo *3 bile and the appellant as the one observed in the parking lot.
I
At the trial of this cause and on appeal, the appellant contends that the trial court erred in failure to follow Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed. 2d 69 (1986) requirements. After selecting the jury, but prior to trial of this case, the following occurred: (R. 20-30)
“(... out of the presence and hearing of the jury)
“THE COURT: Okay. Everyone is present in the trial except the jury. What is your motion?
“MR. SAINT: Yes, sir, I have not seen that written decision from the Supreme Court. I have seen a summation of it. It’s my understanding that if there is a question as to the arbitrary striking of an individual from the Negro race, those potential jurors who are also black, to be able to preserve a claim that you must take the prosecutor under oath, prior to commencement of the trial, to ascertain the reason why he struck those people. Now we had, according to my records, 45 people that could have served on this jury. Of those strikes the prosecution had 17. The defense had 16. Of all the individuals that could have served, 13 of them were black. Twelve of them were struck.
“THE COURT: Did you strike any blacks?
“MR. SAINT: No, sir.
“THE COURT: There’s one black lady on the jury, apparently she is black. I don’t know what the Supreme Court’s definition of black is.
“MR. ABBETT: I don’t either, Your Honor.
“THE COURT: But apparently that would be. Okay, Mr. Abbett, if that is the way they have to do it, I will let him ask you questions.
“MR. ABBETT: Do you want to put me under oath or what?
“THE COURT: I guess, if that's the way—
“MR. SAINT: That’s my understanding, Your Honor.
“THE COURT: Do you solemnly swear that the testimony and the evidence you are about to give in this cause will be the truth, the whole truth and nothing but the truth?
“THE WITNESS: I do.
“MR. SAINT: Your Honor, I would also like it noted or we can stipulate that the defendant, Stoney Byrd Jordan, presently before the court is an individual of the — is a Negro.
“VANCE NICHOLAS ABBETT
“a witness after having been first duly sworn, testified as follows, to-wit:
“DIRECT EXAMINATION
“BY MR. SAINT:
“Q. Mr. Abbett, regards to this case that the jury was just struck, State versus Jordan, how many potential jurors were there on the strike list?
“A. I don’t know.
“Q. Okay. Do you have anything in your records that would refresh your memory as to that number?
“A. I believe I had 16 and you had 17 strikes. That would leave another 12 jurors, potential jurors, on the list.
“Q. Would you check your records again? I believe you had one more strike than the defense. You should reflect 17.
“A. I believe I said 17.
“Q. And I had 16?
“A. Right.
“Q. Okay. Would you describe to the Court, please, what your basis was for the selection of the members of your jury?
“A. Your Honor, that question is so broad and vague that I couldn’t possibly answer it.
“THE COURT: I don’t know how anybody could answer that question, Mr. Saint, having been in the business of selecting juries for years—
“Q. Well, okay. Your first strike was number 22 on the list—
*4 “A. Your Honor, do we have to go over this strike by strike?
“Q. —that person—
“A. I deny that I struck any juror on the basis of race. I don’t know that I’m required to—
“THE COURT: I don’t think the District Attorney has got to—
“A. —go over it juror by juror and explain why I struck them and I don’t believe I—
“THE COURT: Well I don’t think that would be fair, Mr. Saint—
“MR. SAINT: Your Honor, I plan on going down each individual strike and asking him to tell the Court and put on the record specifically why that individual was struck.
“THE COURT: Mr. Saint, I sustain the objection if he makes one to it—
“MR. ABBETT: I object to it.
“THE COURT: Let me ask you this now: I understand the Supreme Court decision but are they saying — that would require the District Attorney in each case, like for instance, a case that’s tried the first day of the week to divulge everything they know about the jurors before they strike them.
“MR. ABBETT: Judge, I could have struck some of these people just because I didn’t like their personal appearance.
“THE COURT: I understand.
“MR. SAINT: Well, Your Honor, unless I’m allowed to go through that and we have to take, or I have to take Mr. Abbett’s statement that he didn’t strike anybody—
“THE COURT: You don’t have to-
“MR. SAINT: —on the—
“THE COURT: —the statement on that.
I don’t know how to get it before the—
“MR. ABBETT: I didn’t strike any juror on the basis of race. In fact there is one juror, I believe, that’s black that is on the jury that's impaneled to hear the trial of the case. The jury is composed of white males, white females and blacks.
U * * *
“THE COURT: Well I’m trying to figure out how to proceed on this. This is the first time its ever come up. I’m aware of the Supreme Court case that says you can’t strike people strictly on the basis of race.
“MR. ABBETT: Your Honor, I didn’t strike anybody on the basis of race. As I stated earlier, blacks don’t like crime any better than anybody else does. It’s been my experience and I’ve been in law enforcement since 1966.
“MR. SAINT: Well, your Honor, unless you allow me to ask questions specifically of the members that were impaneled and also the reason why he struck them, each individual jury member, I see no way to get into as to the reasons why that person was struck.
“THE COURT: I won’t allow you to ask/ the District Attorney why he struck each individual person.
“MR. SAINT: Well, Your Honor, I think that is necessary testimony as to each individual member. Unless I’m allowed to go into that I have no way of soliciting from Mr. Abbett, and I take exception to your ruling.”
Just before this cause came to trial, the decision in Batson v. Kentucky, 84-6263, April 30, 1986, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 had recently been announced and a copy was not available for use by the trial court at the time.
In Levert v. State (Ala.Crim.App.) 512 So.2d 790 (1987), this court specifically addressed the same issue now pending and stated:
“While this cause was pending in this court, the Supreme Court of the United States rendered its opinion in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). In Batson, the court rejected the evidentiary burden which had formerly been placed upon a defendant who asserted an equal protection of law claim with reference to the State’s alleged discriminatory use of peremptory challenges under Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). The U.S. Supreme Court overruled Swain in this regard and adopted a case by case approach to the proof re *5 quired to show discriminatory challenges instead of the heavy burden of proving historical data of continued or systematic exclusion of blacks from juries in case after case, whatever the circumstances, whatever the crime and whoever the defendant or victim may be. Batson, supra.
“Under date of January 13,1987 in Griffith v. Kentucky, and Brown v. United States, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), the United States Supreme Court determined that their opinion in Batson should be applied retroactively to all cases pending on original direct appeal as of April 30, 1986, the date of Batson.
“This holding in Griffith and Brown, supra is consistent with the U.S. Supreme Court’s interpretation of their understanding of the retroactivity of their opinions. Specifically, see Desist v. United States, 394 U.S. 244, 259, 89 S.Ct. 1030, 1039, 22 L.Ed.2d 248 (1969); United States v. Johnson, 457 U.S. 537, at 555, 102 S.Ct. 2579, at 2590, 73 L.Ed.2d 202 (1982); Shea v. Louisiana, 470 U.S. 51, 105 S.Ct. 1065, 84 L.Ed.2d 38 (1985). “Moreover, while this cause was pending in this court on original direct review, the Supreme Court of Alabama rendered its opinion in Jackson v. State, 516 So.2d 768 (Ala.1986), in which the Alabama Supreme Court determined that the rule of Batson v. Kentucky, supra requires that, as a matter of state law, the prosecution’s use of its peremptory strikes be subject to the same rule of law as is set forth in Batson v. Kentucky. See also, Zackery v. State, 521 So.2d 1 (Ala.1987) and Owens v. State, No. 85-1008, January 9, 1987 (Ala.1987). “Under the mandate contained in the opinion of the Supreme Court of the United States in Bat-son, this court has no alternative but to remand this cause for a hearing with counsel present to represent the appellant and does, hereby, direct the State of Alabama, through its District Attorney, to set forth its reasons in using its peremptory challenges to remove certain black persons from the jury venire in this cause as shown by the record. (Cases cited in this opinion).
“A return shall be filed in this court showing the testimony taken in circuit court on this question and the findings of the trial judge, by written order, with reference to the evidence developed in this hearing. Such return shall, together with the trial judge’s findings and order, be filed expeditiously in this court following the hearing in circuit court.”
See also Crawford v. State, 504 So.2d 1221 (Ala.Crim.App.1987).
REMANDED WITH DIRECTIONS FOR A HEARING.
All the Judges concur.
ON MOTION TO DISMISS APPEAL
The appellant and his counsel have filed a motion in this court requesting that his appeal be dismissed and this cause be remanded to the circuit court for entry of a plea of guilty and sentence, in accordance with the agreement filed in this court. This agreement is dated February 5, 1988, and was filed in this court on February 8, 1988.
The motion to dismiss this appeal is granted and this cause is, hereby, remanded to circuit court for entry of a plea of guilty by the appellant, Stoney Byrd Jordan, and sentence by the circuit court in accordance with the agreement herein mentioned.
APPEAL DISMISSED; CAUSE REMANDED TO CIRCUIT COURT FOR SENTENCE.
All the Judges concur.