PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

JASON LANDIS LINDER, a/k/a Black, a/k/a Rodney Peterson,

*Defendant-Appellant.*

No. 07-6137

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Raymond A. Jackson, District Judge.
(2:04-cr-00016-RAJ-JEB-5)

Argued: December 3, 2008

Decided: January 12, 2009

Before WILLIAMS, Chief Judge, and TRAXLER
and KING, Circuit Judges.

Affirmed by published opinion. Chief Judge Williams wrote
the opinion, in which Judge Traxler and Judge King joined.

## COUNSEL

**ARGUED:** Victor Andrew Rortvedt, Justin Sanjeeve
Antonipillai, ARNOLD & PORTER, L.L.P., Washington,
D.C., for Appellant. Richard Daniel Cooke, OFFICE OF THE

UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee. **ON BRIEF:** Chuck Rosenberg, United States Attorney, Alexandria, Virginia; Darryl J. Mitchell, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Norfolk, Virginia, for Appellee.

---

## OPINION

WILLIAMS, Chief Judge:

In a written plea agreement with the Government, Jason Landis Linder knowingly and voluntarily waived his right to a direct appeal of his conviction and sentence for conspiracy to distribute and possess with the intent to distribute heroin. On direct appeal, we enforced this waiver and rejected Linder's challenge to his sentence under *United States v. Booker*, 543 U.S. 220 (2005). Now, in this 28 U.S.C.A. § 2255 (West 2006 & Supp. 2008) proceeding, Linder once again seeks to escape the terms of his plea agreement, asking us to remand his case for resentencing. We decline to do so. Linder simply may not avoid the consequences of his knowing and voluntary appeal waiver and our prior judgment by re-raising his *Booker* claim on collateral review.

I.

On May 25, 2004, Linder knowingly and voluntarily pleaded guilty pursuant to a written plea agreement to one count of conspiracy to distribute and possess with the intent to distribute one kilogram or more of heroin in violation of 21 U.S.C.A. §§ 846, 841(a)(1) and (b)(1)(A) (West 1999 & Supp. 2008). The plea agreement provided in relevant part:

**4.  Waiver of Appeal and Review**

The defendant also understands that Title 18, United

> States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Nonetheless, *the defendant knowingly waives the right to appeal the conviction and any sentence within the maximum provided in the statute of conviction (or the manner in which that sentence was determined) on the grounds set forth in Title 18, United States Code, Section 3742 or on any ground whatsoever*, in exchange for the concessions made by the United States in this plea agreement.[1]

(J.A. at 53 (emphasis added).) At Linder's plea hearing, the district court conducted a proper Rule 11 colloquy, during which Linder stated that he had signed the plea agreement, initialed the bottom of each page, read each paragraph, discussed the agreement with counsel, and fully understood the agreement. Linder also specifically acknowledged that he understood that he was waiving his right to appeal any sentence within the statutory maximum. The district court accepted Linder's plea, finding "that [Linder] is fully competent and capable of entering an informed plea, that he understands the nature of the charges and the consequences of his plea, [and] that the plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense." (J.A. at 50.)

---

[1]"Applying standard contract law, we enforce a plea agreement's plain language in its ordinary sense and do not write the contracts of the parties retroactively, but merely construe the terms of the contract the parties have previously signed." *United States v. Jordan*, 509 F.3d 191, 195 (4th Cir. 2007) (internal quotation marks and citations omitted). In the plea agreement, Linder waived only his "right to appeal," not his right to seek collateral review under § 2255. Of course, a collateral attack is distinct from a direct appeal. Thus, under the plain language of the plea agreement, Linder did not waive his right to file a § 2255 motion. *See United States v. Pruitt*, 32 F.3d 431, 433 (9th Cir. 1994) ("A plea agreement does not waive the right to bring a § 2255 motion unless it does so expressly. The government gets what it bargains for but nothing more.").

Following Linder's guilty plea but prior to his sentencing, the Supreme Court decided *Blakely v. Washington*, 542 U.S. 296 (2004), holding that the Sixth Amendment right to a jury trial applies, in state criminal proceedings, to any fact that increases the penalty for a crime beyond the prescribed statutory maximum. *Id.* at 303-05. We subsequently issued a published order in *United States v. Hammoud*, 378 F.3d 426 (4th Cir. 2004), *vacated*, 543 U.S. 1097 (2005), instructing district courts to "continue sentencing defendants in accordance with the guidelines, as was the practice before *Blakely*," and recommending that, "[i]n the interest of judicial economy," district courts "also announce, at the time of sentencing, a sentence pursuant to 18 U.S.C. § 3553(a) [ ], treating the guidelines as advisory only." *Id.*

Thereafter, a probation officer prepared a Presentence Investigation Report ("PSR") for Linder. In the PSR, the probation officer attributed 4,888.736 grams of heroin and 9.6 grams of cocaine base to Linder through relevant conduct, *see* U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.3 (2003), and, based on these amounts, determined that Linder's base offense level was 34 pursuant to U.S.S.G. § 2D1.1(c)(3) (2003). The probation officer determined that Linder was subject to both a four-level enhancement pursuant to U.S.S.G. § 3B1.1(a) (2003) for his leadership role in the offense and a three-level reduction pursuant to U.S.S.G. § 3E1.1 (2003) for his acceptance of responsibility.

Linder objected to the probation officer's determination of drug weights in the PSR as well as the description of his role in the conspiracy. Linder also asserted that the holding in *Blakely* should apply to his sentencing proceedings, arguing that the Sixth Amendment right to a jury trial attaches to findings that enhance a defendant's sentence under the Federal Sentencing Guidelines. Thus, Linder contended that, based on a drug weight of 1,500 grams of heroin—the amount the Government thought it could prove at the time the plea was entered, his base offense level should be 32 (rather than 34).

On October 1, 2004, the district court denied Linder's motion to strike and dismiss the sentencing guidelines enhancements from the PSR, citing *Hammoud* for the proposition that "*Blakely* does not apply to the United States Sentencing Guidelines." (J.A. at 93.)

At sentencing on October 4, the district court found by a preponderance of the evidence that the drug weights involved exceeded four kilograms of heroin and set the base offense level at 34. The district court increased the offense level by 4, finding by a preponderance of the evidence that Linder acted in a leadership or organizer role in a conspiracy that involved five or more participants, and reduced the offense level by 3 for Linder's acceptance of responsibility, so that Linder's total offense level was 35. Based on this offense level and Linder's Criminal History Category of V, the district court sentenced him under the then-mandatory guidelines to 262 months imprisonment. Following our guidance in *Hammoud*, the district court also found that "[i]n the event the Court was not confined by the sentencing guidelines in this case, the Court would impose a sentence of 120 months." (J.A. at 159.)

Noting that the sentence imposed was within the statutory maximum and that Linder had previously waived his right to appeal any sentence within the statutory maximum, the district court asked Linder if he still wanted to abide by his waiver of his right to appeal. Linder responded, "Yes, sir." (J.A. at 157.) The district court entered the judgment on October 13, 2004.

Despite the waiver of his right to appeal, Linder noticed a timely appeal on October 14, 2004, challenging his sentences based on *Blakely*. While his direct appeal was still pending before us, the Supreme Court decided *Booker* on January 12, 2005, holding that "the Sixth Amendment as construed in *Blakely* does apply to the Sentencing Guidelines," *Booker*, 543 U.S. at 226-27, and that "two provisions of the Sentenc-

ing Reform Act of 1984 (SRA) that have the effect of making the Guidelines mandatory must be invalidated," *id.* at 227. The Supreme Court applied the holdings "to all cases on direct review." *Id.* at 268.

Ultimately, the Government invoked the appeal waiver in Linder's plea agreement, and we dismissed Linder's appeal on April 5, 2006, concluding that Linder waived his right to appeal and that the waiver included any challenges under *Blakely* or *Booker*. *United States v. Linder*, 174 F. App'x 174, 175 (4th Cir. 2006) (per curiam) (unpublished). The Supreme Court denied certiorari on October 2, 2006. *Linder v. United States*, 127 S. Ct. 328 (2006).

In addition to his petition for a writ of certiorari before the Supreme Court, on July 13, 2006, Linder, acting *pro se*, filed a Memorandum in Aid of Sentencing ("Petition for Relief") in the district court, requesting that the district court, in light of *Booker*, "vacate the sentence of 262 months and impose the Court['s] alternate sentence of 120 months." (J.A. at 185.) The district court informed Linder that it "intend[ed] to construe [Linder]'s motion under 28 U.S.C. § 2255 (Supp. IV 1998), as a Motion to Vacate, Set Aside and/or Correct Sentence," and ordered Linder to file a response within 30 days to the court's intention to construe the motion in this manner. (J.A. at 191.)

On August 18, 2006, Linder, through counsel, filed a Motion to Impose Alternative Sentence, which the district court incorporated into Linder's Petition for Relief under § 2255. On October 12, 2006, the district court denied the Petition for Relief, reasoning as follows:

> [T]he Fourth Circuit has squarely held that the rule in *Booker* is not to be applied retroactively to prisoners whose convictions became final before *Booker* was decided. Petitioner's judgment was filed on October 13, 2004. *Booker* was decided on January

12, 2005. Petitioner's appeal to the Fourth Circuit was dismissed and his motion to remand denied because Petitioner waived his right to appeal in the plea agreement. Therefore, Petitioner's conviction was final before *Booker*, and *Booker* does not apply in the instant case.

(J.A. at 209-10 (internal citations omitted).)

Linder, *pro se*, filed a Motion to Alter or Amend Judgment, arguing that his conviction was not final on the date the Supreme Court decided *Booker* and that, under *Clay v. United States*, 537 U.S. 522 (2003), his conviction did not become final until the Supreme Court denied certiorari on October 2, 2006. The district court denied the motion, and this appeal followed.

We possess jurisdiction under 28 U.S.C.A. §§ 1291 and 2253 (West 2006).

II.

A.

In an appeal from the denial of a § 2255 motion, we review a district court's legal conclusions *de novo*. *United States v. Poindexter*, 492 F.3d 263, 267 (4th Cir. 2007).

The Supreme Court has held that "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases . . . pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past." *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987). Applying this principle, the *Booker* Court held that its holdings applied "to all cases on direct review," but was careful to note that not "every appeal will lead to a new sentencing hearing" because it "expect[ed] reviewing courts to apply ordinary prudential doctrines, determining, for

example, whether the issue was raised below and whether it fails the 'plain-error' test." 543 U.S. at 268. Pursuant to this guidance, we upheld Linder's appeal waiver and denied him *Booker* relief on direct appeal even though he was sentenced under the mandatory Guidelines.

Now, on appeal of the district court's denial of his § 2255 motion seeking a remand for resentencing consistent with *Booker*, Linder argues that, despite his appeal waiver, his case was "pending on direct review" when *Booker* was decided on January 12, 2005 because he timely noticed a direct appeal on October 14, 2004 and we did not resolve his direct appeal until April 5, 2006—nearly 15 months after *Booker* was decided. In Linder's view, his conviction was not "final" until the Supreme Court denied certiorari on October 2, 2006. Thus, Linder maintains that *Booker*'s holdings apply to his case and that we must remand for resentencing consistent with *Booker*.

The Government counters that *Booker* is unavailable to Linder in his § 2255 motion because Linder litigated and lost his Sixth Amendment claim on direct appeal. The Government therefore contends that Linder may not avoid the consequences of his appeal waiver and our prior judgment by reviving his *Booker* claim in a § 2255 motion.

B.

We agree with Linder that his conviction was not "final" until the Supreme Court denied certiorari. *See Clay*, 537 U.S. at 527 (noting that, in the context of post-conviction relief, "[f]inality attaches when [the Supreme] Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires"); *Latham v. United States*, 527 F.3d 651, 653 (7th Cir. 2008) ("A defendant who forswears appellate review as part of a plea bargain remains entitled to file a notice of appeal. Although that appeal is doomed unless the guilty plea

is involuntary . . . the possibility that the defendant will be able to have the plea vitiated permits at least the preliminary stages of an appeal. . . . If we dismiss the appeal, the defendant is entitled to ask the Supreme Court to review our judgment by writ of certiorari, and *Clay* will determine the date on which the conviction becomes 'final'."). Thus, Linder's conviction was not "final" at the time *Booker* was decided. We still must decide, however, whether Linder is entitled to relief under *Booker* on collateral review given that we already denied him such relief on direct appeal.

In *Shea v. Louisiana*, 470 U.S. 51 (1985), the Supreme Court confronted the issue of whether *Edwards v. Arizona*, 451 U.S. 477 (1981), was "applicable to a case pending on direct appeal in a state court at the time *Edwards* was decided." *Shea*, 470 U.S. at 52. In resolving the issue, the Court held:

> [I]f a case was pending on direct review at the time *Edwards* was decided, the appellate court must give retroactive effect to *Edwards*, *subject, of course, to established principles of waiver*, harmless error, and the like. If it does not, then a court conducting collateral review of such a conviction should rectify the error and apply *Edwards* retroactively. This is consistent with Justice Harlan's view that cases on collateral review ordinarily should be considered in light of the law as it stood when the conviction became final.

*Id.* at 58 n.4 (emphasis added).

We find this holding determinative of the issue before us. On direct appeal, Linder challenged his sentence based on *Blakely* and *Booker*. *See Linder*, 174 F. App'x at 175. Consistent with *Shea*'s instruction that "the appellate court must give retroactive effect to [a new rule for the conduct of criminal prosecutions], subject . . . to . . . waiver," we refused to give

effect to *Blakely* or *Booker* because Linder's challenges were within the scope of his plea agreement's knowing and voluntary direct appeal waiver. *See Linder*, 174 F. App'x at 175 (dismissing claims challenging sentences based on *Blakely* and *Booker* "[b]ecause the Appellants waived their appellate rights in their plea agreements"). Linder may not circumvent a proper ruling on his *Booker* challenge on direct appeal by re-raising the same challenge in a § 2255 motion.**²** *See* Brian R. Means, *Fed. Habeas Practitioner Guide*, Jurisdiction ¶ 1.23.0 (2006/2007) ("Where the petitioner only waives the right to appeal, he is not precluded from filing a petition for collateral review. But he is precluded from raising claims that are the sort that *could have* been raised on appeal." (emphasis in original) (internal citations omitted)); *cf. Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976) (per curiam) ("Boeckenhaupt will not be allowed to recast, under the guise of collateral attack, questions fully considered by

---

**²**Linder argues that the Government waived this argument because it did not raise the direct appeal waiver as a procedural bar to relief under Linder's § 2255 motion before the district court. Even if we agreed with Linder that the Government had failed to raise the waiver argument in the district court, we would still consider it in the unique circumstances of this case where (1) Linder appealed his sentence despite the appeal waiver in his plea agreement, (2) the Government sought to enforce the waiver of appellate rights on direct appeal, (3) we granted the motion to dismiss the direct appeal on the basis of the knowing and voluntary waiver, (4) there is no suggestion that our ruling on direct appeal was in error, and (5) Linder now presents the same challenges to his sentence on collateral review. *See United States v. Metzger*, 3 F.3d 756, 758 (4th Cir. 1993) (suggesting that, even where Government failed to raise waiver as a procedural bar, "unique interests in judicial efficiency, conservation of scarce judicial resources, and orderly and prompt administration of justice" may sometimes support our consideration of the waiver as a procedural bar (internal quotation marks omitted)); *cf. Rosario v. United States*, 164 F.3d 729, 732-33 (2d Cir. 1998) (holding that, under "the unique circumstances of this case," consideration of the issue of defendants' procedural default was "appropriate" even though the Government had failed to raise the argument). Were we not to consider the Government's waiver argument, we would effectively be reversing our prior decision on direct appeal even though its correctness has not been challenged.

this court in [his direct appeal]."); *United States v. Sanin*, 252 F.3d 79, 83 (2d Cir. 2001) ("It is well established that a § 2255 petition cannot be used to relitigate questions which were raised and considered on direct appeal." (internal quotation marks omitted)); *Dupont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996) (same). We therefore conclude that relief under *Booker* is unavailable to Linder on collateral review.

### III.

For the foregoing reasons, the judgment of the district court is hereby

*AFFIRMED*.